C. H. RANCK, Plaintiff in Error, v. SARAH ANN WICKWIRE.

Division Two, February 17, 1914.

1. **SPECIFIC PERFORMANCE: Defective Description of Land: Admission of Contract.** The contract for the sale of lands need not so fully and accurately describe them that they may be identified from a mere reading of the description; but it must afford the means whereby the identification may be made definite and certain by parol evidence. A contract describing the land as "280 acres of land in St. Clair Co., Mo., belonging to the party of the second part" contains a description sufficiently definite to enable the land to be identified by the introduction of parol evidence; especially, where the owner did not plead the Statute of Frauds, and admitted the execution of the contract.

2. ————: **Defects in Title: Trivial Objections: Release of Other Party.** Where the contract for the exchange of lands provided "both parties to furnish a clear title and abstract, with deed of said properties, soon as same can be brought down to date," trivial objections by plaintiff to defendant's title, made when her abstract was furnished, which he in-

sisted must be corrected, even when informed that they could not be corrected, thereby in effect refusing to accept her title as then submitted, afforded defendant a reciprocal reason for a refusal to perform, since time was of the essence of the contract, and its requirements for a deed as soon as the abstract could be brought down to date meant that each party would in good faith comply with them within a reasonable time, and that neither would interpose objections which, if trivial, would serve only to delay or defeat performance.

3. ———: ———: **Failure to Remove.** Before plaintiff can have enforced a contract for the exchange of lands, it becomes his duty where the abstract of his lands shows an outstanding contingent remainder or missing patents or defective deeds, to either remove the defects or to look up the evidence *in pais* necessary to reasonably satisfy the defendant that the title is good and that the apparent defects do not, in fact, exist; especially, where he knew at the time the contract was made that the remainder had become vested, but did not inform defendant of that fact when he was apprised of the fact that it seemed to be contingent, and knew that no patents had been issued by the Government and he did not attempt to procure them until long after he was told the abstract failed to show them. He who seeks equity, must do equity.

4. ———: **Delivery of Deed.** Where the contract for the exchange of land provided that at the time of the exchange of abstracts, deeds should be delivered, a failure by plaintiff to deliver a deed to defendant, sending it only to the bank in which certain papers pertaining to the transaction were deposited, and tendering it at the trial, may be of minor importance, but indicates that he was not zealous for the performance of his part of the contract.

5. ———: **Destruction of House by Fire: Prior to Compliance With Conditions.** Where, before the submission to defendant of an abstract showing a clear title in him and tendering a deed, things the contract for the exchange of lands required, a valuable dwelling house on plaintiff's lands burns by accident, while there is no depreciation in the value of defendant's property, and plaintiff offers nothing by way of reparation, he cannot have specific performance.

6. ———: **Not an Absolute Right.** Specific performance of a contract to exchange lands is not a matter of absolute right, but of sound judicial discretion. Much less strength is required on the part of a defendant to resist a bill to perform than is required on the part of a plaintiff to maintain it, because if denied, the plaintiff may have a remedy at law for damages. Performance will be denied in any case where, under all the circumstances, it would be inequitable.

Ranck v. Wickwire.

Error to Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

AFFIRMED.

*A. F. Evans* and *Bruce Barnett* for plaintiff in error.

(1)   The description of the land in the contract sued on is sufficient. The identification of the land is made certain by parol evidence at the trial of this cause. Keator v. Realty Co., 231 Mo. 676; Tetherow v. Anderson, 63 Mo. 96; Shewalter v. Pirner, 55 Mo. 218; Hammond v. Johnson, 93 Mo. 198; Marvin v. Elliott, 99 Mo. 616; Bacon v. Leslie, 52 Kan. 494; Bacon v. Leslie, 34 A. S. R. 134; Hurley v. Brown, 98 Mass. 545, 96 Am. Dec. 671; Mead v. Parker, 115 Mass. 413, 15 Am. Rep. 110; Waring v. Ayres, 40 N. Y. 357; Preble v. Abrahams, 88 Cal. 245, 22 A. S. R. 301; Land Co. v. Dayton, 42 Minn. 73. (2)   Defects, if any, in the defendant's title constitute no defense to this action. The defendant will not be permitted to take advantage of the weakness of her own title. The plaintiff is entitled to such a deed as the defendant can give. Real Estate Co. v. Spelbrink, 211 Mo. 671; 26 Am. & Eng. Ency. Law, 83, par. 4; Meek v. Hurst, 223 Mo. 688; Coal & Iron Co. v. Long, 231 Mo. 605; Lanyon v. Chesney 186 Mo. 540; 36 Cyc. 740. (3)   Where trustees have no other title to property except as trustees, any conveyance from them, for a valuable consideration, will be deemed to be in pursuance and execution of the trust. That is to say, that the courts are loath to construe an instrument as having no effect or purpose, but on the contrary are prone to put upon an instrument a construction which will give it some force and effect. Reilly v. Chouquette, 18 Mo. 229; Pease v. Iron Co., 49 Mo. 126; Owen v. Ellis, 64 Mo. 77; Campbell v. Johnson, 65 Mo. 439; Boyer v. Allen, 76 Mo. 498; Scheidt v. Crecelius, 94 Mo. 322; Under-

wood v. Cave, 176 Mo. 1; Collier's Will, 49 Mo. 328; 22 Am. & Eng. Ency. Law (2 Ed.), 1112. (4) Defendant's answer complains that no patents appear to have been issued to parts of the land, but patents were introduced in evidence covering every portion of plaintiff's land involved in the contract. (5) There is a dispute between the parties as to whether Mr. Ranck or his attorney refused to waive the defects in defendant's title, but conceding for argument's sake that plaintiff did refuse to waive these defects, this constitutes no defense for the reason that defendant had contracted not only to exchange properties, but to furnish a clear title. The contract contains the words "and both parties to furnish a clear title."

*Thomas A. J. Mastin* and *Joseph S. Brooks* for defendant in error.

(1) A decree for specific performance is not a matter of absolute right but a matter of discretion—sound judicial discretion. Sease v. Company, 141 Mo. 488; Paris v. Haley, 61 Mo. 453; Veth v. Gierth, 92 Mo. 97; Pomeroy v. Fullerton, 131 Mo. 181; Davis v. Petty, 147 Mo. 374; Pomeroy, Spec. Perf., secs. 35, 36, and notes. (2) When a vendor is called upon to exhibit a perfect title, he must exhibit a title which is perfect to a moral certainty, one which does not disclose a patent defect suggesting the possibility of a lawsuit to defendant. The title must be free from reasonable doubt. This rule is not applicable only in cases of perfect title, but also in cases where the contract calls for a good title or a clear title as the contract in this case requires. Gerhart v. Peck, 42 Mo. App. 644; Hymers v. Branch, 6 Mo. App. 511; Pomeroy, Spec. Perf., secs. 198, 199, 200; Luckett v. Williamson, 31 Mo. 57. (3) Before plaintiff can successfully invoke the powers of a court of equity to enforce the specific performance of a contract to purchase land, he must have been "ready, willing and

eager'' to perform the contract on his part. Holl-mann v. Conlon, 143 Mo. 369. (4) A greater degree of certainty is required in the terms of a contract which is to be specifically executed than is necessary in a contract which is to be the basis of an action at law for damages. Mastin v. Halley, 61 Mo. 196. (5) The contract must be certain and definite and there must be no uncertainty about it. It must be so precise and exact in its terms that neither party could rea-sonably misunderstand them and these terms must be satisfactorily established by the evidence. Mastin v. Halley, 61 Mo. 196; Paris v. Haley, 61 Mo. 453; Taylor v. Williams, 45 Mo. 80. (6) And though the court may entertain a favorable opinion of the title, yet if that opinion may be questioned by competent persons, specific performance will not be decreed. Hymers v. Branch, 6 Mo. App. 511. (7) If after exhibiting to the vendee such chain of record title as grantor may have, it appears that there is a break or gap in it, the vendor and not the vendee must look up the evidence necessary to supply the gap and to show the title good, and this evidence he must communicate to the vendee before the latter can be put in the wrong for refusing to take the title. Gerhart v. Peck, 42 Mo. App. 642; Birge v. Bock, 44 Mo. App. 69. (8) A plaintiff who refuses to accept a title cannot insist upon specific per-formance of a contract to convey land when the title he will get is precisely the title which he refused. Goldthwait v. Crowther, 9 Utah, 186. (9) A written contract for the sale of land is insufficient under the Statute of Frauds if the land cannot be identified from its terms without having recourse to parol proof. Such a contract cannot rest partly in writing and partly in parol. King v. Wood, 7 Mo. 389; Shelton v. Church, 10 Mo. 774; Beckman v. Mepham, 97 Mo. App. 161; Fox v. Courtnay, 111 Mo. 147; Weil v. Willard, 55 Mo. App. 376; Pomeroy, Spec. Perf., p. 226 and notes; Parkhurst v. Van Cortland, 1 Johns. Ch. 280; Reed's

Heirs v. Hornback, 4 J. J. Marsh. 377; Whelan v. Sullivan, 102 Mass. 204; White v. Hermann, 51 Ill. 243; Johnson v. Fecht, 185 Mo. 345; Ringer v. Holtzclaw, 112 Mo. 519; Reigart v. Co., 217 Mo. 142; Mason v. Small, 130 Mo. App. 251; Hain v. Burton, 118 Mo. 577

WALKER, P. J.—This is a suit in equity in which the plaintiff seeks a decree for the specific performance of a contract for the exchange of plaintiff's two hundred and eighty acres of land in St. Clair county, for certain lots in Kansas City, belonging to defendant. Upon a hearing before the circuit court of Jackson county, at Independence, at its September term, 1908, the court found the issues in favor of the defendant, and a decree was rendered accordingly. The case is here on a writ of error brought by plaintiff.

*The contract* in question, omitting the signatures, is as follows:

> This agreement made this 5th day of Jan. 1907, between Mrs. Sarah Ann Wickwire of Bates Co., Mo., party of the first part, and C. H. Ranck, of Cedar Rapids, Ia., party of the second part. Said party of the first part, agrees to exchange lots (11)-(12)-(23)-(24) in Bismark Place, Addition Kansas City, Mo., for 280 acres of land in St. Clair Co., Mo., belonging to the party of the second part; and party of the first part agrees to assume mortgage of $4000 in favor of A. W. Hudson, at 5½ per cent interest, on said land in St. Clair Co., Mo.; party of the second part to assume $50 note in favor of Eugene Lindsay, and both parties to furnish, a clear title and abstract, with deed of said properties, soon as same can be brought down to date.

The pleadings, omitting captions and signatures, are in substance as follows:

*Petition.* The plaintiff alleges that he has a good and indefeasible title to the land (particularly describing it) which he had agreed to transfer to defendant; that defendant has title to the lots in Kansas City

which she had contracted to convey to plaintiff. The contract is then set out according to its terms; and plaintiff further alleges that he has furnished defendant with abstracts of title to the land he proposes to convey to her, showing clear and indefeasible title in him, and has offered to convey said land to defendant by a deed of warranty executed by himself and wife, and has demanded that defendant in consideration thereof convey to him her said real estate in Kansas City, and that she has refused and still fails and refuses so to do. Wherefore he asks judgment for specific performance, etc.

*Answer.* Defendant admits she entered into the contract with plaintiff by which she agreed to exchange certain lots, described as in the contract, to plaintiff for 280 acres of land in St. Clair County, that said land was not described in the contract, and that same did not show what land was intended to be conveyed, following this with admissions of the further agreements appearing in the contract, not necessary to be repeated here; that in January, 1907, plaintiff caused an abstract of title of certain lands in St. Clair county to be delivered to her, and about said date she submitted same to her attorneys, who, after examining same, reported to her, on January 26, 1907, that the title to the lands of the plaintiff was defective in the following respects: that about 200 acres of said land, particularly described in said answer, was affected by a contingent remainder therein specifically set forth; and that a certain forty acres of said land appeared from the abstract to have been held at one time by trustees and to have been transferred by them as agent, and that as to eighty acres of said land no patents or title appeared in said abstract to have emanated from the Government; that the report and conclusion of her said attorneys had been delivered or offered to be delivered to plaintiff, stating her objections to said title, and that no effort had been made by

plaintiff to correct the defects therein except that plaintiff had offered to institute a suit for the purpose of correcting the deed made by the trustees as agent; following this are specific allegations in which defendant sets up the defects in plaintiff's title heretofore generally pleaded.

Defendant further alleges that plaintiff and defendant, under said contract, were to furnish clear titles and abstracts showing same, with deeds to said properties, as soon as said abstracts could be certified to date, and that no deed conveying plaintiff's lands in said St. Clair county was furnished with said abstract and delivered to defendant or to anyone for her, as required by said contract; that no time was stated in said contract for the perfecting of said title to the lands, but that it was provided that a deed was to be furnished as soon as the abstract could be brought down to date and a clear title to said lands was to be furnished at the time said abstract and deed were delivered; that defendant on or about the 7th day of February, 1907, at the request of plaintiff, delivered his abstract of said St. Clair county land to one Abernathy in Kansas City, and that same was by him subsequently returned to the plaintiff; that at said time negotiations were still pending between plaintiff and defendant for the purpose of concluding the exchange of properties between them; that about the time of the return of said abstract by defendant, plaintiff caused to be delivered to her a certain report upon the title to her property in Kansas City, which she had agreed to transfer to plaintiff, in which report plaintiff set forth more than twenty specific objections to the title of the defendant to the said property in Kansas City, and that all of said objections were frivolous; that defendant was led to believe and did believe, on account of the conduct of the plaintiff in his requiring the return of the abstract and his

255 Mo. 4

frivolous objections to defendant's title, that he intended to rescind and did thereby rescind the contract between him and defendant. Further answering she denies each and every allegation in plaintiff's petition contained. Following this is a counterclaim for damages set up by defendant, on which the trial court found against her, and no appeal was taken from this finding; the counterclaim is, therefore, not for consideration.

*Reply.* Plaintiff for his reply states that defendant went upon and examined the land belonging to plaintiff in St. Clair county, the same which he had contracted to transfer to her, and at the time of the execution of said contract defendant well knew the location and boundaries of said land. He denies that his title to said land is defective in the particulars set out in defendant's answer, and states that at all times in the petition mentioned, he had a clear and marketable title to the land, subject only to the encumbrance referred to in the contract, and that he caused abstracts of title to the lots in said petition described as belonging to defendant, to be examined, and that based upon said examination he made certain objections in writing, to the title to said lots, which objections defendant failed and refused to remedy, and which plaintiff then waived and withdrew, and offered to accept such title as defendant had to said lots, notwithstanding said defects.

Following this is a denial of each and every allegation of new matter in defendant's answer not hereinbefore admitted.

The material testimony is as follows:

The defendant, put on the stand by plaintiff, admitted the execution of the contract and that she had not complied with same.

Plaintiff testifying in his own behalf, said that he never at any time owned any other than the 280 acres of land in St. Clair county, mentioned in the

contract; that upon entering into the contract he gave his abstract of the land to a Mr. Abernathy, of a bank in Kansas City, to have it brought down to date, and then to be delivered to T. A. J. Mastin, who represented the defendant; that plaintiff was directed so to do by the defendant.

The abstract in question was introduced in evidence, about which there is no question, except as to its showing defects in the title; that Mastin wrote a letter to plaintiff, acknowledging receipt of the abstract; that plaintiff subsequently received letters from Mastin and defendant concerning said abstract, these he turned over to his local attorney at Cedar Rapids, Iowa, where plaintiff then lived; that plaintiff went to Kansas City in April, 1907, and with John F. Francisco, his attorney, of Butler, Missouri, called on Mastin concerning his contract with defendant. Objections to plaintiff's title were made at said meeting by Mastin and J. S. Brooks, also counsel for the defendant; that Mastin, among other things, declared he didn't intend the defendant should exchange property with the plaintiff; that plaintiff then said he was ready and willing to cure any defects in his title if he knew what they were.

On cross-examination plaintiff stated that since the making of the contract the residence or building on the St. Clair county land had been destroyed by fire; that when he and Francisco went to Mastin's office and had a conversation about plaintiff's title, plaintiff did not remember whether anything was said about the specific objections made by defendant's counsel to his, plaintiff's, title; that if any patents were obtained to any part of his land, it was after he visited Mastin's office, and that such patents had not been issued at the time he made this contract; that it was over six months before this trial when plaintiff heard that the building on his land had been destroyed by fire; that heretofore he had brought suit against the

defendant in Bates county, for damages on account of her failure to comply with her contract with him, that is, his attorney had begun some kind of a suit, as he had not been down there himself, but that it had since been dismissed; that the abstract of title he had furnished defendant's counsel was returned to him, at Cedar Rapids, Iowa, he doesn't remember whether by counsel for defendant, or Abernathy of Kansas City; that plaintiff afterwards brought the abstract to Kansas City and gave it to Bruce Barnett, his attorney, employed in this suit; plaintiff is uncertain whether his attorneys made an effort to correct the defects noted in the abstract; he doesn't remember what was done; he wrote to Abernathy to get Mastin's objections to the abstract and he would try to perfect the title. It was admitted that no suit had been brought to perfect any alleged defects in plaintiff's title to the land; that he may have employed attorneys named Francisco and Clark, of Butler, to bring suit to correct his title; that after he met Francisco in Kansas City, when they visited Mastin's office, there was no employment of Francisco. During the plaintiff's cross-examination, the letter of counsel for defendant, addressed to plaintiff, in which they set up in detail their statement of the defects in plaintiff's title, was introduced in evidence. It contains the specific objections set forth in the answer.

Plaintiff on redirect examination stated that the defendant personally examined his St. Clair county land, and wrote him the next day thereafter at Cedar Rapids, Iowa; that on the Thursday before they entered into the contract defendant told him that she had examined the land, and also on the day the contract was made; that plaintiff's abstract was returned to him directly after he wrote to Abernathy for it; that he is now ready to execute a warranty deed to the 280 acres described in the petition, to the defendant, and has been ready at all times since the contract was

made; that he will make said deed and deposit it in the manner the court may direct, and in other respects comply with the contract.

John F. Francisco, attorney, testified that he went with the plaintiff to Mastin's office when the plaintiff stated that he would remedy any defects in the title to his land that could be remedied, and wanted them pointed out. On cross-examination witness stated he remembered that counsel for defendant referred to the outstanding contingent remainder as shown in plaintiff's abstract of title, and that parties who had held portions of the land as trustees had deeded the same as agent, but doesn't remember whether anything was said about large judgments outstanding against St. Clair county.

Bert Dines, a former tenant of plaintiff, on the St. Clair county land, testified he removed therefrom about the first of March, 1907, because the plaintiff told him he had sold the farm, and that defendant and her brothers came down there and said they guessed they had traded for the land; that defendant said she thought she had traded some lots she owned in Kansas City for the farm, and wanted to bring some personal property there and leave it; that witness gave her permission so to do, and said he would give possession of the land the first of March anyway; that defendant at that time proposed to sell witness eighty acres of the land; that defendant looked over the farm with witness; that defendant was at witness's house on the land twice; that these visits were prior to the letter written by Mastin to plaintiff, objecting to the title to the land on account of defects therein shown in the abstract. Witness upon refreshing his memory says that the two visits of defendant to plaintiff's land were on December 16, 1906, and January 23, 1907; that since he vacated the premises, until the house burned down, it had no tenant; that the house was destroyed about a year ago, or possibly a little later.

Testimony of this witness and that of one John Swofford was also introduced to prove by their personal knowledge of the persons named in the deed creating the contingent remainder, that same had become vested. A patent issued to a fractional forty acres of plaintiff's land by the United States Government, under date of June 16, 1908, or a year and a half after the execution of the contract in question introduced in evidence. Counsel for plaintiff at the time of offering same contended there were no corrections to be made in the title or in the abstract to plaintiff's lands; that the patent received by plaintiff was not necessary to enable him to enforce the contract.

Recalled, plaintiff stated that on the 8th day of January, 1907, he and his wife executed a deed to defendant to the St. Clair county land, and sent same to a Mr. Abernathy of the First National Bank of Kansas City, it being understood between plaintiff and defendant that said bank should be used as a depository for their respective papers. The deed itself was excluded because it had not been tendered to defendant. Upon the refusal of the court to admit the deed in evidence, counsel for plaintiff tendered same to the court to be deposited with the clerk, or held in such manner as it may direct for the purpose of transferring the title from the plaintiff to the defendant, of the St. Clair county land, in return for which plaintiff's counsel demanded that the title to defendant's property be transferred to plaintiff.

The testimony for the defendant, of Jos. S. Brooks, one of her counsel, was that he had examined and reported on the titles as submitted in the abstract furnished by plaintiff; that upon completing this examination, reports of the result of same were made in detail to the defendant about January 26, 1907; that he was present when plaintiff and Francisco visited his and Mastin's office; that the special defects which had been reported to the defendant in regard to the

plaintiff's title were then discussed at length with plaintiff and his counsel, among which was the contingent remainder, shown by the abstract to be outstanding, and that plaintiff and his counsel were asked for a showing as to such contingent remainder; that plaintiff or his counsel stated that they thought the parties were living and that deeds could be obtained from the children, but they did not know; that anyhow, the title could be cured; that considerable discussion was had in regard to the matter of the contingent remainder, and it was explained to the plaintiff and his counsel how the title could be corrected, but nothing was said by plaintiff or his counsel about the death of the party shown in the abstract to have held the land in trust; that the large judgments then outstanding against St. Clair county were discussed, and it was stated by counsel for defendant if the other defects in the title were corrected perhaps they would not lay any stress upon the existence of these judgments against the county; that plaintiff had made about twenty objections to the defendant's title to her Kansas City property, and it was stated by counsel for defendant that unless plaintiff would waive them they could not be corrected and the deal could not be closed. A copy of plaintiff's objections to the defects in defendant's title was then offered in evidence. Witness stated that plaintiff said he would not waive any of these objections, that he would make his title good and that he wanted her to make her title good. A list of the judgments rendered against St. Clair county in favor of holders of bonds of said county, was then introduced in evidence.

T. A. J. Mastin, one of defendant's counsel, testified that he was present when plaintiff and Francisco visited witness's office; that witness stated to plaintiff he had not personally examined the abstract, knew nothing about it, but would and did call his associate, J. S. Brooks, who was familiar with the matter; that

in a general way witness recalled that they discussed the procuring of deeds to cure the defect as to the contingent remainder, and also as to the transfer of the property by the trustees as agent; that Brooks said to plaintiff that the latter's lawyer in Iowa had made a lot of trivial objections to defendant's title, which Brooks said could not be corrected, whereupon plaintiff said that they would not be waived. Other conversation was had in regard to suits to correct the title, but nothing definite was determined upon or done.

Defendant testified in her own behalf that she had visited the property the plaintiff had contracted to deed to her, and that the house which she since understood had been destroyed by fire, was worth about one thousand dollars; that at the time she expected to take the land and asked the tenant Dines if she could sell him eighty acres of same, provided she traded for it; that she knew of no defects at that time in the title, and did not know of them until so informed by her attorneys, who reported against her acceptance of the deed after her second visit to the land; that she arranged with the tenant for his removal from the land in the event she traded for it, he saying he was going to buy a place and move away anyway; that she wanted the land if the title was all right.

Further evidence was introduced in regard to the judgments of bondholders against St. Clair county, stated by Brooks, upon being further examined, to be $2,000,000. This was all the testimony.

I. The assignments of error, in this case, if our review be confined thereto, are too general and indefinite to merit consideration. It, therefore, becomes necessary, unless we allow the letter of the law of appellate procedure, as announced in our Rule 15, to prevail, to look elsewhere in the record to determine in what respect plain-

Review of Errors.

tiff contends that he has been injured by the rulings
of the trial court. His brief, although foreign in its
principal features to the assignment of errors, sub-
mits matters occurring during the trial, of which he
complains, and under the rule announced in Collier v.
Catherine Lead Co., 208 Mo. 246, we will review it.

II. In the contract plaintiff's land is described as
"280 acres of land in St. Clair county belonging to
the party of the first part;" in his petition,
Description   the land which he alleges is the same as
of Land.      that referred to in the contract, is described
by Government subdivisions or by sections, townships,
and ranges. Defendant in her answer does not plead
the Statute of Frauds, but alleges that the description
of the land in the contract is not such as will enable it
to be identified or located, or, in effect, that there is
no sufficient description of the land in the contract,
and that her liability must be measured by that instru-
ment alone.

Without reviewing at length the numerous rul-
ings of this court in reference to the sufficiency of de-
scriptions of lands in contracts for specific perform-
ance, it may suffice to say, as was said by MARSHALL, J.,
in Johnson v. Fecht, 185 Mo. l. c. 344, in which Fox v.
Courtney, 111 Mo. l. c. 150, was cited with approval:
" 'The writing must be a guide to find the land, must
contain sufficient particulars to point out and distin-
guish the tract from any other.' " And in the later
case of Keator v. Realty Company, 231 Mo. 676, 680,
VALLIANT, J., speaking for the court, after citing with
approval Springer v. Kleinsorge, 83 Mo. 152, and
Black v. Crowther, 74 Mo. App. 480, says: "The land
need not be fully and actually described in the paper
so as to be identified from a mere reading of the paper.
But the writing must afford the means whereby the
identification may be made perfect and certain by
parol evidence." Guided by these well-defined dec-

larations. of law, we are of the opinion that the description of the land in the contract is sufficiently definite to enable same to be rendered certain by the introduction of parol evidence (Fowler v. Fowler, 204 Ill. 82, 97), especially in view of the fact that the Statute of Frauds was not pleaded by the defendant and she admitted the execution of the contract. Ever since the ruling by Scott, J. (1842), in McGowen v. West, 7 Mo. 284, it has been held here that one making a parol contract to convey lands may or may not insist on the protection of the Statute of Frauds. If he confesses the contract and does not insist on the statute, i. e., plead the same, the performance of his agreement will be enforced against him. The following cases, with many others, reiterate this rule: Missouri R. E. Syndicate v. Sims, 179 Mo. l. c. 685; St. L. K. & N. W. Ry. Co. v. Clark, 121 Mo. 169; Aultman v. Booth, 95 Mo. l. c. 389; Maybee v. Moore, 90 Mo. 340.

III.    As we interpret the evidence, defendant did not attempt to take advantage of any weakness in her own title to defeat plaintiff's action, but **Defects in Defendant's Title.** averred in her answer and so contended at the trial, by the introduction of testimony in relation thereto, that plaintiff had urged in his conference with her counsel many objections to her title, all of which were alleged to be trivial, which was not denied by him at the trial, but that plaintiff had insisted upon their correction, and when informed that it could not be done, he declared that he would make his title good and that she must do likewise; thus, in effect, refusing to accept her title as then submitted. This course, defendant contends, was indicative of a purpose on the part of the plaintiff to refuse in good faith to perform his part of the contract, and hence reciprocally afforded her a reason for a like refusal.

The contract requires that each was to furnish the other an abstract showing a clear title, with deeds to their respective properties, as soon as same (evidently referring to the abstracts) could be brought down to date. This meant that each party was to comply in good faith with these requirements within a reasonable time (and in a case of this character time is of the essence of the contract; Taylor v. Longworth, 14 Pet. 172, 174; Holgate v. Eaton, 116 U. S. 33, 40), and that neither would interpose objections which, if trivial, would only serve to delay or defeat performance on the part of the other. That plaintiff's objections were trivial is attested by his subsequent proposal to waive same. This, in our opinion, did not, within the time contemplated by the terms of the contract, indicate a bona-fide purpose on plaintiff's part to perform same, and defendant's attitude in regard thereto is not without foundation.

IV. It is not necessary to a proper disposal of this case to determine whether the outstanding contingent remainder, the defective deed and Defects in Plaintiff's the missing patents constituted, in fact, defects in plaintiff's title. They appeared as Title. such in the abstract submitted to the defendant, from which she was to determine the character of plaintiff's tenure. If there is a break or gap in a record title, it becomes the duty of the owner to look up the evidence *in pais* necessary to satisfy the vendee that the title is good. [Gerhart v. Peck, 42 Mo. App. 644, 652.] It became the duty of the plaintiff, therefore, to remove these defects in his title appearing in the abstract or satisfy the defendant that they did not exist. It appeared at the trial that plaintiff or his counsel knew at the time of the negotiations that the contingent remainder had become vested, but they did not apprise defendant of this fact. While some preliminary talk was indulged in between plaintiff, his

counsel and counsel for the defendant, at the time the conference was held in Mr. Mastin's office, in regard to the institution of a suit by plaintiff to correct the defective deed, nothing was done, nor were the missing patents procured until long after the conference; in fact, there is nothing to indicate their procurement until a short time before the trial. He who seeks equity, must do equity. Plaintiff's failure to perform his part of the contract does not commend him to a court of conscience. While asking relief, it is meet that he should be able to show that he has done all he agreed to do. Having failed in this regard that is sufficient to prevent his prevailing in this proceeding. [Lanyon v. Chesney, 186 Mo. 540, 553.]

V. It will be recalled that one of the requirements of the contract is that the parties shall at the time of the exchange of abstracts, also deliver deeds, each to the other, of their respective lands. This plaintiff did not do, but sent his deed to a party in Kansas City, tendering it to defendant only at the time of the trial. In this particular instance, plaintiff's failure, in view of the other facts, may be regarded as of minor importance, but it was one of the express conditions of the contract, and if plaintiff had been zealous in the performance of his part of same, he would have complied with this requirement.

Delivery of Deed.

VI. It was disclosed during the trial that the dwelling house or residence on plaintiff's land at the time of the contract, estimated to have been worth one thousand dollars, had been destroyed by fire some months after the contract was entered into and about a year before the trial. Plaintiff offered nothing by way of reparation for this loss, but simply ignored defendant's proof in regard to same. Land, especially a farm, is of much less value without than with a dwell-

Destruction of Property.

ing house thereon.  Plaintiff is, therefore, demanding that defendant be required to accept in exchange for her property, which from the evidence is, at least, as valuable now as when the contract was made, property of the plaintiff worth one thousand dollars less now than when she agreed to accept it, when its depreciation is not to be attributed to any act of hers. Equity will not lend its aid to the consummation of such a purpose on the part of the plaintiff.  [Huguenin v. Courtenay, 21 S. C. 403, 53 Am. R. 688.]  Under other conditions than existing here, the destruction of the building would not have availed as a defense.  To illustrate:  If the plaintiff had fully complied with his part of the contract before the building was burned, by the submission to the defendant of an abstract showing a clear title to the lands in him and had tendered her a proper deed, the contract might be held to have been consummated so far as he was concerned, and the subsequent accidental destruction of the building would not have availed as a defense to the performance of the contract.  [Brewer v. Herbert, 30 Md. 301, 96 Am. Dec. 582; Lombard v. Chicago Sinai Cong., 64 Ill. 482.]

VII.  Finally this fact should be borne in mind; that the specific performance of a contract is not a matter of absolute right, but of sound discretion of the court; hence much less strength

Conclusion.

of case is required on the part of a defendant to resist a bill to perform a contract than is required on the part of the plaintiff to maintain it, because if the court refuses to enforce the specific performance, the plaintiff may be left, in a proper case, to his remedy at law. [Veth v. Gierth, 92 Mo. l. c. 104.]  The remedy will be denied in any case where, under all the circumstances, the decree would be inequitable.  [Real Est. Co. v. Spelbrink, 211 Mo. 671, 710; Pomeroy v. Fullerton, 131 Mo. 581, 592.]  We hold that it would be here.

It follows, therefore, that the judgment of the trial court should be affirmed, and it is so ordered. *Brown, J.,* concurs; *Faris, J.,* concurs in the result and in all except paragraph two.