AMERICAN CENTRAL INSURANCE COM-
PANY, a Corporation, and Springfield Fire
& Marine Insurance Company, a Corpora-
tion, Appellants,

v.

Effie KIRBY, Respondent.

Nos. 22423, 22425.

Kansas City Court of Appeals.

Missouri.

Oct. 4, 1956.

Knipmeyer, McCann & Sanders, Lewis W. Sanders, Kansas City, for appellants.

Cliff H. Bailey, Kansas City, for respondent.

DEW, Presiding Judge.

The appellants brought their separate actions against respondent and one Lorene Peters in which they sought a declaratory

judgment to determine the rights of the parties under their identical fire insurance policies issued, respectively, to respondent on the same building, which had since been destroyed by fire. They also sought findings that they had no obligation under the policies for the loss. Respondent filed a counterclaim for the full amount of the policy in each case. Lorene Peters defaulted in both cases. By agreement the two cases were consolidated for purposes of trial and proceeded against respondent. The judgment in the cause as so consolidated was against the appellants on their petitions and in favor of the respondent for $1,750 on each of her counterclaims, with interest in the sum of $166.25 and costs. The Court denied her prayer for attorney's fees and damages for vexatious delay. Thereupon the appellants separately appealed, but upon their stipulation filed herein the appeals have been consolidated.

The petitions allege the issuance of the fire insurance policies to the respondent on her building (near Warsaw, Missouri) as therein described; that thereafter, on February 9, 1954, respondent entered into a contract with Lorene Peters for the exchange of that property for certain described property owned by the latter; that the exchange contract had been executed and acknowledged by the respondent and Lorene Peters, earnest money had been paid thereunder, and the owners had executed warranty deeds to each other. It was further alleged that on February 28, 1954, the building described in the policies was totally destroyed by fire. The petitions pleaded that both defendants had demanded payment of the policies and that an actual controversy was pending requiring a declaration of the respective rights of the parties to avoid a multiplicity of suits. It was also pleaded that the appellants are no longer obligated under their policies. The relief prayed was that the Court declare the rights of the parties and adjudge the liability of the appellants under the policies to have ceased.

The answer admits the policies and the exchange contract; alleges that no exchange of property was ever made; that no deeds were ever delivered, and avers that the title to respondent's property has at all times remained vested in her. Otherwise, the answer is in the nature of a general denial. For her counterclaims, respondent alleges the payment of the premiums due for the policies issued by the appellants on her property; that the property was totally destroyed by fire during their terms; that demand was made for the payment of the amounts of the policies, and alleges vexatious refusal by the appellants to pay. She prayed for the amounts of the two policies, with interest, damages in the sum of $175 and $500 as reasonable attorneys' fees for vexatious delay. Appellants' reply was in the nature of a general denial of the new matter alleged in the answer.

The main issue of the controversy is whether or not respondent had an insurable interest in the property insured by the policies at the time that property was destroyed by fire, February 28, 1954. Each policy provided that no assignment of it would be valid except with the written consent of the insurer.

The exchange contract in evidence, dated February 5, 1954, was by and between George N. Peters and Lorene M. Peters, parties of the first part, Effie Kirby, party of the second part, and Don-Mar Realty Company, party of the third part. The Peters therein agreed that on or before March 1, 1954, they would sell and convey to respondent by warranty deed certain property described as "Schedule 'A'", together with an assignment of all insurance policies on that property upon payment of unearned premiums. A similar clause provided that respondent Kirby would, on or before March 1, 1954, sell and convey to the Peters by warranty deed her property designated as "Schedule 'B'", together with an assignment of all insurance policies on that property upon payment of unearned premiums. It was further provided that the first and second parties would, within

20 days after date of the contract, deliver to the office of Don-Mar Realty Company complete abstracts of title to date, each to have five days thereafter to examine the abstracts and to report defects of title, if any, to the Don-Mar Realty Company, and that if such defects were not rectified within thirty days thereafter by the owner, and no extension of time be given therefor, then, at the option of the other party, the contract would become null and void and the abstracts returned to the owners.

The exchange contract further provided: "It is further agreed that the parties to this contract shall each, within —— days from date of execution of this contract, execute and deposit with Don-Mar Realty Company the deeds to their respective properties as designated in Schedules 'A' and 'B', to be held in trust by them until the completion of the contract, and the said Don-Mar Realty Company is authorized to deliver said deeds on completion of this contract". The contract further provided that the place to make tender of the papers of the transaction was in the office of the Don-Mar Realty Company; that legal tender so made would bind the parties; that the party of the first part would pay Don-Mar Realty Company $825 commission and the party of the second part, $425 commission.

Preston Forsee, an attorney who for a while after the fire loss represented Lorene Peters and her husband in the transaction in question, testified that about May 5, 1954, he went to the office of counsel for the Don-Mar Realty Company, agent in the transaction, and saw in that office warranty deeds which purported to have been executed by the respondent and Lorene Peters and husband; that the deed from respondent to Lorene Peters, his client, was dated February 18, 1954, as was also his client's deed to respondent; that he also saw a deed of trust securing a note for $1,500 made by respondent to the Peters. He testified that his memorandum there made recited that "Peters paid off $1500 on the Warsaw property March 4, 1954. February 18, 1954, the

insurance policy was assigned to Lorene Peters".

Preston Forsee further testified that on May 5, 1954, he wrote a letter, received in evidence, in which he notified appellants that the Peters, before the fire, had acquired the insured property by an exchange contract with respondent; that the agent was holding the policies for fear of litigation in the matter and that deeds and insurance assignments had been executed. He demanded that appellants withhold any payment of the policies until the parties had come to an agreement or their rights had been determined by a competent court.

On June 4, 1954, George Peters handed to Preston Forsee a letter received from respondent as follows:

> "Kansas City, Missouri
> "June 4, 1954.
> "To Don-Mar Realty Company and
> George N. Peters and Lorene M. Peters
> "You and each of you are to take notice that I do not intend to comply with the terms of a real estate exchange contract entered into between you and myself and dated the 5th day of February, 1954, and that the deeds, and deeds of trust, notes, insurance assignments and other documents pertaining to said exchange of properties now in the hands of Cliff Bailey, attorney for Don-Mar Realty Company, signed by me, are hereby rescinded, and I now state that whatever sum I owe Lorene Peters and George Peters because of my refusal to complete the exchange of properties, I will pay them, and Don-Mar Realty Company is requested to refund to the said Peters the $825.00 commission collected from said Peters by said Don-Mar Realty Company.
> "Effie E. Kirby".

On cross-examination Preston Forsee said that the Peters never did have the deed from the respondent in their possession, and

that the attorney for the Realty Company never offered to deliver it to him. A suit was later filed by the Don-Mar Realty Company against respondent and Lorene M. Peters and husband for a decree permitting it to appropriate the funds deposited with it in the transaction in question to apply on its claim against the parties to the contract for commission and attorneys' fees and expenses. The witness further testified that on June 24, 1954, he received a written "release" from George and Lorene Peters as attorney in "the case of Effie Kirby".

Don Robinson, witness for the appellants, testified that he operated under the name of Don-Mar Realty Company and was the agent for the parties in the exchange contract described. He said he recalled seeing deeds in the transaction in the files in his office, signed by respondent and Lorene Peters and husband, and dated February 18, 1954; that his company on or about June 17, 1954, had sued respondent over the transaction; that one of the parties had "backed out" and wanted to call off the deal "or something like that". The petition in his case, allowed in evidence without objection, alleged that the parties had executed assignments of insurance on the same date. Witness said he was told by one of the parties "to hold the money and not turn over—I don't remember when the fire occurred but I think that is what caused us not to go through with it". He said that the parties had never directed him to deliver their deeds to each other; that Mr. Peters had asked him to hold the money and "everything", had said he "would not go through with this contract". The witness said he had never delivered any assignments of the insurance to either of the parties or their agents, but "held everything because there was a dispute over closing it".

Lester Leamon, adjuster for the Western Adjustment & Inspection Company, investigated the fire loss and on April 19, 1954, saw in the file of the Don-Mar Realty Company the exchange contract, warranty deeds signed by the parties and assignments of insurance. He could not recall seeing respondent's signature to the assignments of insurance. The policies had about three and a half months to run after the fire. The premiums were paid up. He never tendered back to respondent any part of the premiums paid.

Respondent, who lived in Kansas City, Missouri, testified that she first heard of the fire on March 4, 1954, when Mrs. Peters called her and told her; that she then called the insurance agent, who referred her to Mr. Leamon, the adjuster. The latter came to see her and later investigated the fire loss. She demanded the payment of the policies but appellants refused to pay. No part of her premiums have ever been repaid or tendered to her. She still occupies the property in her name and claims to own it.

Respondent further testified that she never was in the office of the Don-Mar Realty Company and never appeared before a notary public for the purpose of executing any instruments referring to her property. She said that on March 4, 1954, Mr. Robinson, the agent, and a saleswoman named Mrs. Ward, came to her home. She was ill but they pushed the door open and they insisted that respondent sign "this and that". She said that she had not previously signed a warranty deed to Mrs. Peters, nor did she recall signing one on March 4. She was asked " * * * whether or not between the time that you acknowledged this agreement for the trade of your property, and the 28th day of February, 1954, * * * did you sign any warranty deeds and deliver them to anybody, for the sale of your property in Benton County, Missouri? A. I did not". She said she never delivered any assignment of insurance to either Mrs. Peters, Mr. Robinson or Mrs. Ward, or any other papers except the exchange contract. She said that prior to the date of the signing she had received no closing statement nor did she receive any deed from Mrs. Peters.

On cross-examination, respondent repeated that she never had signed a warranty deed or any assignment of insurance in the transaction, but she signed some papers when Mrs. Ward had called on her while the witness was ill and had tried to get the witness to sign a deed, which she refused to do. She admitted signing the letter, notifying the parties that she would not comply further with the exchange contract. She did not know who had prepared that notice. She later got all her papers back. She engaged an attorney, Mr. Bressler, who later died. She said both parties were demanding the return of their papers.

Evidence of value of legal services rendered to the respondent was offered, but the Court announced that the issue of vexatious delay would not be submitted.

Appellants contend that the Court erred in refusing to direct a verdict for them and in submitting to the jury respondent's counterclaims for the reasons that she failed to plead and prove she had an insurable interest in the property at the time it was destroyed, without which interest the policies became void; that the exchange contract in evidence vested an equitable title and risk of loss in respondent's purchaser, respondent holding legal title merely to secure the purchase price, and that under the evidence respondent held no vendor's lien.

■■ Respondent maintains that the defense of forfeiture for want of an insurable interest was waived by appellants' admitted retention of the unearned premiums. However, an insurable interest in an insurance contract is not the subject of a mere promise or warranty, the variation of which may be waived by the conduct of the insurer. As a prerequisite to the enforcement of an insurance contract, public policy demands that the insured have an insurable interest, otherwise the contract would become a gambling contract and void. Estes v. Great American Insurance Co. of New York, Mo.App., 112 S.W. 2d 153, 156; White v. Merchants' Insurance Co., 93 Mo.App. 282. "No insurable interest existing, the contract is considered absolutely void, since it would contravene public policy to hold otherwise. As pointed out, the contract is, under circumstances showing no interest in the insured, purely a wager which will not be sanctioned by the court". Insurance Law and Practice, Appelman 4, Section 2121, page 18.

The question is: Did the evidence establish the contention of the appellants that respondent had no insurable interest in the property described in the policies at the time of its loss by fire on February 28, 1954? As noted, there was substantial evidence that the respondent and Mrs. Peters, before the fire, had executed their respective deeds to their properties, together with assignments of insurance, and had deposited the same with their mutual agent Don-Mar Realty Company under the terms of the contract. As stated, the contract provided that the agent should hold such instruments in trust "until the completion of the contract, and the said Don-Mar Realty Company is authorized to deliver said deeds on completion of this contract". The contract further provided for exchange of abstracts to the property within twenty days after date and for the time limit for correction of errors or defects, if any, in the titles. The date fixed by the contract for the sales and conveyances was March 1, 1954.

It was said by this court in Mahan v. Home Insurance Co., 205 Mo.App. 592, 226 S.W. 593, 594: "It is the rule in this state that, after a contract for the conveyance of real estate has been entered into by the execution of a bond for title and notes for the purchase money, the property is at the risk of the purchaser. If it burns up, it is his loss; if it increases in value, it is his gain.' Snyder v. Murdock, 51 Mo. 175. This is the view later announced by the Supreme Court, as shown in Ranck v. Wickwire, 255 Mo. 42, 61, 164 S.W. 460. * * * If one sells his property so that the title passes to his vendee, though it be

a title in equity without deed, its destruction total or partial, is the loss of the vendee. But if the vendor has yet an interest in the property after sale, as, for instance, by vendor's lien for all or a part of the purchase money, he, of course, has an insurable interest in the nature of a similar right in a mortgage."

There was no proof that on or before the date of the fire, February 28, 1954, either party to the sales contract had yet authorized the agent to deliver her deed to the other, nor had they authorized him to deliver the insurance assignments, other than on the conditions of the contract, nor that the agent did so deliver any such instruments, nor that either party had received any such instrument, nor was there any proof that abstracts had yet been supplied, exchanged and examined, or that defects in the title, if any, had been reported within the time specified. In fact the contract fixed March 1, 1954, as the limit of the time for the sale and conveyance by each. The evidence was that the deeds and assignments had never been received by either respondent or by Mrs. Peters and that respondent had remained in possession and control of the property and claimed it as owner. The building to be sold and exchanged by respondent having meanwhile, on February 28, 1954, been destroyed by fire, and the status of the exchange transaction being as above described, both parties thereto mutually rescinded their respective agreements and withdrew from their mutual agent the papers so deposited by them. It is under those facts in evidence that appellants assert that at the time of the loss the respondent held legal title for the purpose only of securing the payment to her of the price for which she had agreed to sell, and has never since held any insurable interest in her property, despite the mutual rescission of the contract prior to its completion.

In the well considered and much cited case of Crossman v. American Insurance Co. of Newark, New Jersey, 198 Mich. 304, 164 N.W. 428, at page 429, L.R.A.1918A,

390, the court, in considering what constitutes an insurable interest, said: "It may be a special interest entirely disconnected from any title, lien, or possession. If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance. The question is not what is his title to the property, but rather, would he be damaged pecuniarily by its loss. If he would, he has an insurable interest. That interest may be derived by possession, enjoyment, or profits of the property, security or lien resting upon it, or it may be other certain benefits growing out of or dependent upon it."

The court in the Crossman case, supra, quoted from Getchell v. Mercantile & Mfg's Fire Ins. Co., 109 Me. 274, 83 A. 801, " * * * The crucial question therefore is, Will the insured be directly and financially affected by the loss of the property insured? If so, he has such an interest as the law will recognize. The loss must not be indirect or sentimental, but direct and actual. It is not necessarily an interest in the property in the sense of title, but a concern in the preservation of the property and such a relation to or connection with it as will necessarily entail a pecuniary loss in case of its injury or destruction * * *.'"

In Key ex rel. Heaton v. Continental Insurance Co., 101 Mo.App. 344, 74 S.W. 162, at page 165, it was said: " * * * so long as the insured is exposed to the danger of the loss against which he was indemnified, the insurance continues in force * * *."

As stated in 44 C.J.S., Insurance, § 175, p. 870: "An 'insurable interest' is sui generis, and peculiar in its texture and operation. In general a person has an insurable interest in the subject matter insured where he has such a relation or connection with, or concern in, such subject matter that he will derive pecuniary benefit or advantage from its preservation, or will suffer pecuniary loss or damage from

its destruction, termination, or injury by the happening of the event insured against." See, also, 44 C.J.S., Insurance, § 188(a), p. 886.

 It is our conclusion that the evidence failed to establish that at the time of the loss of respondent's property by fire the exchange contract by which respondent had agreed to sell and convey the property had been fully completed and its provisions complied with so as to pass the title and to divest the respondent of her insurable interest in the property and its preservation, but that she continued to possess sufficient interest in it and in the title thereto as to constitute a valid insurable interest under the policies. Appellants admit that after the date of the contract she continued to hold legal title for the purpose of securing the agreed purchase price in trade. It must be conceded that such was a valuable and substantial interest. It cannot be said that the destruction of the property itself would not and did not damage her pecuniary interest in it. Any outstanding equitable right of Lorene Peters and husband in respondent's property by reason of the pending exchange contract not yet completed, was extinguished by the mutual rescission of the contract by both parties. Rogers v. Fremder, Mo., 261 S.W. 105, 111; Deu Friend v. McDermott, Mo. App., 251 S.W.2d 339, 342. See 91 C.J.S., Vendor & Purchaser, § 125, p. 1054.

For the reasons given, we believe the judgment should be affirmed. It is so ordered.

 Since the appeal, respondent has filed a motion in this court for the assessment of ten percent of the judgment for damages under Section 512.160 RSMo 1949, V.A.M.S. for taking an appeal without merit. In view of the facts as shown of record and hereinbefore more fully stated, we conclude that the motion should be overruled, and we so order.

All concur.