Juanita WILLIAMSON, Plaintiff-Respondent,

v.

Oliver BURNETT, Defendant-Appellant,

and

Archie Johnson and Curlie Johnson, his wife, Defendants.

No. 48285.

Supreme Court of Missouri,

Division No. 1.

April 10, 1961.

Henson & Henson, Poplar Bluff, for appellant.

Tedrick & Casey and Kearby & Calvin, Poplar Bluff, for respondent.

HOUSER, Commissioner.

This is a suit for specific performance of a contract for the sale of real estate. On the petition of Juanita Williamson the Circuit Court of Butler County decreed that Oliver Burnett, original owner of the land, and Archie Johnson and wife, subsequent grantees, convey the land to Juanita Williamson, failing in which title would vest by virtue of the decree. Co-defendants Johnson permitted the decree to become final as to them. Oliver Burnett appealed on the point that the evidence of what land was to be conveyed was too vague and indefinite to support the findings and decree of the circuit court.

In this equitable action involving the title to real estate this Court reviews the entire record and reaches its own conclusions as to the facts, determining the weight and value to be given the evidence, and deferring when proper to the findings of the trial court. Anderson v. Abernathy, Mo.Sup., 339 S.W.2d 817. On this review we have given particular attention to seller's contention, advanced in his argument, that "there was never an agreement or meeting of the minds between the Plaintiff and Defendant as to the exact acre of land to be conveyed to the Plaintiff, * * *."

It is undisputed that on December 27, 1958 Oliver Burnett ("seller") and Juanita Williamson ("buyer") orally agreed upon the sale and purchase of a certain square one-acre tract of land which the parties mistakenly assumed lay within the boundaries of a 12-acre tract recently set off to seller in a partition suit. The 12-acre tract was a part of the John Burnett farm located on the west side of U. S. Highway No. 67 in Butler County, near Neelyville. The consideration, $300, was paid to seller by a check carrying this notation: "For one acre of land on Hy 67 Neelyville from the John Burnett farm on 67 Highway front." Seller cashed the check and received the proceeds. At the time the check was delivered seller gave buyer a receipt for $300 marked "for 1 acre of my land on highway 67 (from John Burnett farm)." Seller promised to give buyer a deed. When the parties discovered that the acre was part of an adjacent tract which had been set off to seller's brother they readily agreed to abandon the contract.

The parties are in dispute as to subsequent events. According to buyer and her son, and several disinterested witnesses, the parties thereafter entered into a second contract for the sale of a different one-acre tract located within the boundaries of seller's 12-acre tract. According to the uncorroborated testimony of seller, he offered buyer an alternate tract which she refused, and the parties were unable to agree upon any other piece of land.

On the disputed issue we find the facts to be as follows: After the parties voluntarily abandoned the first contract and toward the latter part of January, 1959 there was a meeting of the minds of the parties resulting in a new contract, for the same consideration, as follows: Seller

made buyer an offer, which buyer accepted, to sell another and different one-acre tract of land located within the boundaries of the 12-acre tract, a tract square in shape, beginning at a cherry tree located in the fence line on the east line of seller's 12-acre tract (the west line of the right of way of Highway No. 67), "going one acre south and from the fence back" one acre west. The subject matter of this second sale will be referred to as "the acre in question." In June, 1959 buyer, intending to move some buildings onto the acre in question, ascertained that seller had rented the 12-acre tract to George Mays "for cotton." Mays refused to give buyer possession of the acre in question until he was "paid for the cotton." Seller refused to pay Mays. Seller disclaimed ownership of the acre in question, stated that he had sold it to buyer, and told Mays he would have to look to buyer for his money. On July 9, 1959 buyer paid Mays $150 to settle his claim. In determining how much damage would be done to the cotton the acre in question was measured. Seller was present and participated in the measurement, agreeing that the cherry tree be used as a starting point, and that the cherry tree be the northeast corner of the acre in question. An employee of buyer assisted seller in the measurement of the acre in question, beginning at the cherry tree. Later seller changed his mind about letting buyer have the acre in question, refused to "let it go," and offered buyer a third tract, which was an oblong, one-acre piece of land half an acre wide, using the center of the highway as a starting point. Seller said "This is it" and "This is all you will get." Buyer responded "No, this isn't it." Pursuant to the contract entered into in late January, 1959 buyer moved several buildings onto the acre in question at a cost of $1,200 for moving and $75 for a permit to move buildings over the highways. In April, 1959 seller had been removed from the welfare rolls. Unable to work, sick, having a note due at the bank, and being under the impression that he was "forced" to sell his land in order "to get back" on the welfare rolls, seller sold the 12-acre tract to Archie Johnson for $1,180 on July 22, 1959. Five days later seller sent buyer a check for $300 in an attempt to refund the money paid in December. Buyer refused to cash the check and seller refused to give buyer a deed to the acre in question.

In arriving at a finding that there was a meeting of the minds on the sale of the acre in question, on conflicting testimony, deference has been given to the finding of the trial judge who saw and heard the witnesses face to face, and we have considered the likelihood of the testimony adduced by buyer; the fact that she was corroborated in the essential details of her testimony; the improbability of seller's testimony; the fact that his version of the facts was uncorroborated in its essential details, and the motives which actuated the parties.

■ To be specifically enforceable a contract for the sale of land must designate or describe the land with definiteness or certainty or afford the means by which the identification may be made perfect and certain by parol evidence. Herzog v. Ross, 355 Mo. 406, 196 S.W.2d 268, 167 A.L.R. 407; Ranck v. Wickwire, 255 Mo. 42, 164 S.W. 460; Keator v. Helfenstein Park Realty Co., 231 Mo. 676, 132 S.W. 1114; Smith v. Wilson, 160 Mo. 657, 61 S.W. 597; 81 C.J.S. Specific Performance § 33, pp. 488, 489. Seller contends that the evidence concerning the identity of the acre to be conveyed was not sufficiently definite and certain to support a decree of specific performance. (Seller does not contend that the contract was invalid or unenforceable under the Statute of Frauds, and raises no question of the admissibility of evidence of the terms and provisions of the contract.)

■■ On the question of the sufficiency of the evidence we find no difficulty in arriving at the conclusion that the terms of the contract describing the acre in question, together with the parol evidence admitted without objection, are sufficiently definite

and certain to enable that particular acre to be located and identified. The contract consists of the oral agreement and two written documents (the check and receipt). The language of the agreement definitely locates the acre in question within the 12-acre tract, and the 12-acre tract is definitely located in the Southeast Quarter of the Southeast Quarter of Section 9, Township 22, Range 5 East, Butler County, Missouri by seller's brief which acknowledges seller's ownership of the property described in plaintiff's petition. Plaintiff's petition describes the 12-acre tract as in the southeast corner of the aforesaid quarter quarter section. A surveyor's description of the 12-acre tract, made in February, 1959, was available by resort to the public record of the partition proceedings and the sheriff's deed in partition. The acre in question could be located and placed in the 12-acre tract by any competent surveyor, by finding the cherry tree in the line dividing the 12-acre tract from the highway right of way, and using the cherry tree as the northeast corner and starting point. The location of the cherry tree, known to all parties, was information readily obtainable by resort to available extrinsic evidence. In Bass v. African Methodist Episcopal Church, 150 Ga. 452, 104 S.E. 437, an action for specific performance of a contract to convey land, appellant questioned the sufficiency of a description the beginning point of which was "a certain designated pine tree" on the Sparta and Milledgeville public road "just to the right of the road leading from said public road to the church house." The court sustained this description of the starting point, holding that "A surveyor would have no difficulty in locating such point from the description given in the contract, with the aid of competent extrinsic evidence." The instant contract called for a square acre. A square acre of ground contains 43,560 square feet. It consists of four equal sides, each approximately 208 feet in length. By the term "going one acre south" the parties obviously meant "going the distance of one side of a square acre, or 208 feet, south" for the first course

of the description. By the term "from the fence back one acre west" the parties clearly meant "going the distance of one side of a square acre, or 208 feet, west" for the second course of the description. The parties having contracted with reference to a square acre fronting on the highway and having given the cherry tree as the starting point and northeast corner of the acre, we believe that the description in the contract would enable a competent surveyor to find and identify the acre in question with the aid only of the description itself and of the extrinsic facts referred to in the contract, and entertain no doubt that the contract afforded the means by which the identification of the acre in question was made perfect and certain, and that the parol evidence introduced sufficiently accomplished that identification.

The judgment is affirmed.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.