SOUTHERN FARMERS MUTUAL INSURANCE COMPANY *v.*
MOTOR FINANCE COMPANY.

4-8832                                    222 S. W. 2d 981

Opinion delivered March 28, 1949.
Rehearing denied April 25, 1949.

*Shaver, Stewart & Jones,* for appellant.

*F. B. Clement,* for appellee.

FRANK G. SMITH, J. This is a suit to recover on a policy of insurance against upsets and other hazards. A premium of $67.47 was paid for the insurance, the return of which was tendered in the answer which denied liability, upon the ground that the insured, Hendrix, was not the sole owner of the car as stated in the policy, and that the car had been stolen.

It was stipulated that the automobile was destroyed in an upset collision, while being driven by Hendrix, and that its value at that time was $1,000. The car appears to have had a salvage value notwithstanding this stipulation.

Hendrix purchased the car from the F & F Motor Company of Nashville, Arkansas, and received a duplicate of the contract of sale which recited that the purchase price was $995.05, of which $400 was paid in cash, and a note for the balance was given. The note and the contract of sale reserved the title until the purchase money was fully paid. The note and contract were assigned by the F & F Motor Company to the Motor Finance Company, Inc., which latter company required Hendrix to insure the automobile and the policy here sued

on was issued to Hendrix and the Motor Finance Company, Inc., as their respective interests might appear.

The claim for insurance was delivered to J. C. Morneau, an insurance adjuster, for settlement, who discovered on investigation that the motor number of the car did not correspond with the motor number stated in the policy. Morneau told Hendrix he would proceed with the settlement subject to the approval of the insurance company as to the difference in motor numbers. Morneau took the wrecked car to the J. W. Finley Garage at Texarkana for its salvage value. This was done by agreement between Morneau and Hendrix, or at least without objection. Several days later a representative of Agricultural Ins. Company of Joplin, Missouri, appeared and was given possession of the car, and removed it. It was not shown that anyone objected to this action. Morneau did not know where the car was taken, but the Agricultural Ins. Company carried it away. Max Tackett testified that he was an investigator for the State Police, and that it was his duty to search for stolen automobiles, and in the discharge of this duty he investigated cars in the possession of second-hand dealers. He inspected and checked 126 cars in the possession of the F & F Motor Company, and when he found that the motor number of the car in question was not that stated in the policy, he communicated with the Automobile Underwriters Bureau of Atlanta, Georgia. This is an agency that assists in locating stolen cars. This agency discovered from its records that the car in question had been stolen in Joplin, Missouri. Tackett testified that there was no bulletin on the car.

It was ascertained that the owner had insured this car against theft with the Agricultural Ins. Co. of Joplin, Missouri, and that insurance company paid the insured the amount of his policy, and upon this claim of title took the car from the possession of the Finley Garage.

The car had been driven from Joplin to Lockesburg, Arkansas, and sold to one Welch, a store keeper, and he sold it to Fletcher Webb, who operated a garage at Glenwood, and Webb sold the car to F & F Motor Com-

pany. It was not claimed that Welch, Webb or the F & F Motor Company were aware that the car had been stolen, and it was expressly conceded that their purchases "were on the level," that is, without knowledge that the car had been stolen.

This suit was brought by Hendrix and the Motor Finance Company, Inc., as assignee of the contract of purchase, and as has been said, was defended upon the ground that Hendrix was not the sole owned of the car, as the policy of insurance stated him to be.

The instructions in the case cannot be reconciled. Those on the part of the plaintiffs were to the following effect. It was essential only that Hendrix have an insurable interest in the car, and he had that interest if he would be benefited by the continued existence of the car and would suffer a direct pecuniary loss by its destruction. The jury was instructed that the statement as to the ownership of the car contained in the policy was a mere representation and that its falsity, if false, would not defeat the recovery unless Hendrix knew it was false or was chargeable with such knowledge. This instruction in effect directed a verdict for the plaintiffs as no contention was made that Hendrix was aware that the car had been stolen.

On the other hand the jury was instructed that if the automobile was a stolen car and not the property of Hendrix, a verdict should be returned in favor of the insurance company. The jury was further instructed that all property obtained by larceny shall be restored to the owner, and that no sale, whether in good faith on the part of the purchaser or not, shall divest the owner of his right to such property. This last instruction is a copy of § 1292 of Pope's Digest, and the court gave as an instruction the following section of Pope's Digest, No. 1293, which reads as follows: "Any person losing property or any valuable thing by larceny, robbery or burglary may maintain his action, not only against such felon, but against any person whatsoever in whose hands or possession the same may be found."

One of the leading cases on the subject of insurance issued upon a stolen car is that of *Hessen* v. *Iowa Auto-*

*mobile Ins. Co.*, 195 Ia. 141, 190 N. W. 150, 30 A. L. R. 657. This case contains a review of the leading cases on the subject and is extensively annotated in 30 A. L. R. 657. Supplements to this annotation appear in 38 A. L. R. 1123 and 46 A. L. R. 657.

This case held upon a review of many other cases that an insurable interest was essential to the validity of a policy of insurance and that a title or interest to a car acquired through theft did not constitute an insurable interest although the car had been purchased by the insured in entire good faith without knowledge that it had been stolen.

It was said in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, § 3503: "While it has been held on the one hand that the *bona fide* possession of a stolen vehicle does not give the holder any sort of title such as will measure up to the requirements for an insurable interest, elsewhere a purchaser in good faith of an automobile for a valuable consideration, who is in undisputed possession of it, has an interest therein sufficient to enable him to recover on a policy insuring it, issued to him while in such possession, despite its having been stolen from the original rightful owner."

The case of *Barnett v. London Assurance Corp.*, 245 Pac. 3, 138 Wash. 673, 46 A. L. R. 526, is cited as authority for the text last quoted. This is one of the cases cited in the supplemental annotation on the subject in 46 A. L. R. 526.

In this Barnett case, *supra*, the Supreme Court of Washington said: "Even thought the automobile may have been originally stolen from the rightful owner, the respondent had the title and the right to possession of it as against all the world, except the rightful owner, assuming that the car had been stolen from him. In *Norris v. Alliance Ins. Co.*, 1 N. J. Misc. 315, 123 Atl. 762, it was held that, where the insured was the *bona fide* purchaser of an automobile on which the policy of insurance against theft was issued, his title was good against every one but the original owner, and that in an action upon the policy the insured had a right

to recover for the theft of the car from him, even though originally it had been stolen from the rightful owner.''

The New Jersey case above cited is relied upon by appellee for the affirmance of the judgment in the insured's favor, but the Washington court further quoted from the New Jersey case as follows: ''It was there said: 'The defendant's difficulty is that there is no proof that the insured machine was stolen from its original owner, but, if this be granted, plaintiff's title was good against every one but the true owner, and he is unknown and makes no claim of ownership, and plaintiff has never been evicted. He owned it against all the world but a supposed owner, from whom we are to infer it was stolen. None but he can assert ownership against the plaintiff, which he does not do, and defendant has no right to do it for him. The plaintiff did not, knowingly, make any false representation to defendant as to his ownership; he supposed he was the unconditional and sole owner without any fact known to him to the contrary, and so far as this record shows, was, and is, the only person claiming ownership. So far as defendant is concerned, it is the same as if the automobile had been lost and found by plaintiff, who is the true owner, until evicted by one holding better title. The possession of property is *prima facie* proof of title.' ''

Here there is proof, largely hearsay, that the car in suit had been stolen from the original owner who is known, and who not only made a claim of ownership but actually recovered possession of the stolen car, and so far as the record discloses this was done without objection.

It is true that the original owner is not a party to this litigation, but there was no occasion for him to intervene and assert his title, for the reason that his insurer, who had paid him the value of the car, asserted title thereto by way of subrogation and took possession of the car, apparently, as has been said, without objection. There was no occasion for the original owner, or the insurer, to intervene as the insurer by subrogation has the possession of the car and this right to possession is not called into question. The New Jersey case, which

the Washington case followed, is therefore not applicable, because the true owner's title was asserted and is not questioned in this lawsuit. In the chapter on Automobiles, 5 Am. Jur., § 514, p. 794, it is said: "Automobile insurance policies frequently contain provisions to the effect that the policies shall be void if the interest of the assured is other than that of an unconditional and sole owner. A purchaser of a stolen car does not have sole and unconditional ownership. The question whether the ownership of a chattel mortgagor or mortgagee, or conditional buyer or seller, is sole and unconditional is discussed at another point."

If the undisputed testimony showed that the car had been stolen from and recovered by the original owner we would reverse the case and dismiss it, but the evidence of that fact is largely hearsay and was incompetent for that reason. Nor do we know that the jury found that the car had not been stolen. Under the instructions of the court the jury could have found, in fact would have been required to find, in favor of appellees, although the car had been stolen, as it is undisputed that Hendrix was an innocent purchaser.

The judgment will therefore be reversed and the cause remanded for a new trial, and the jury directed to determine whether, according to a preponderance of the testimony, the car had in fact been stolen from the original owner and surrendered to his possession, and if so, to return a verdict for the defendant.

Justices McFADDIN and MILLWEE dissent.

ED. F. McFADDIN, Justice (Dissenting). The concluding paragraph of the majority opinion reads: "The judgment will therefore be reversed and the cause remanded for a new trial, and the jury directed to determine whether, according to a preponderance of the testimony, the car had in fact been stolen from the original owner and surrendered to his possession, and if so, to return a verdict for the defendant."

I think the judgment of the Circuit Court should be affirmed because, as I see it, the question of the original theft of the car is a matter entirely immaterial in this

case. I cannot bring myself to agree that the unconditional ownership clause in the insurance policy should be allowed to defeat recovery in a case such as was here developed.

Hendrix purchased the car for its full value and in good faith from a reputable automobile dealer. Hendrix insured the car and was in possession at the time of the loss. No question of his ownership or title had ever been raised prior to the time the car became a loss and the claim was filed against the insurance company. While the adjustment of the claim was pending it developed that the car had been stolen before it was sold to the dealer, who resold it to Hendrix. But at the time the car was damaged and the insured loss occurred, the theft of the car was as unknown to the dealer and Hendrix as it was to the insurance company.

The unconditional ownership clause in an insurance policy is designed to prevent corruption and overreaching. Here, the insurance company is being allowed to hide behind the unconditional ownership clause and thereby accomplish an overreaching. What was designed as a shield against oppression is being converted into a sword to effect oppression. To review the authorities contrary to the majority holding herein would only serve to lengthen this opinion. They are listed in the various A. L. R. Annotations mentioned and referred to in the majority opinion. I agree with the statement in Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 6, § 3503: ". . . a purchaser in good faith of an automobile for a valuable consideration, who is in undisputed possession of it, has an interest therein sufficient to enable him to recover on a policy insuring it, issued to him while in such possession, despite its having been stolen from the original rightful owner."

The conclusion of the whole matter is that the majority is allowing the unconditional ownership clause in the policy to work an injustice rather than to prevent injustice. I therefore respectfully dissent, and I am authorized to state that Mr. Justice MILLWEE joins me in this dissent.