**Walter HORTON and Keith Horton, Plaintiffs-Appellants,**

v.

**STATE FARM FIRE & CASUALTY CO., Defendant-Respondent.**

No. 37260.

Missouri Court of Appeals, St. Louis District, Division Four.

March 15, 1977.

Motion for Rehearing or for Transfer to Supreme Court Denied May 6, 1977.

Application to Transfer Denied June 14, 1977.

Carter & Becker, P. C., Donald S. Singer, Clayton, for plaintiffs-appellants.

Gerard Hempstead, St. Louis, for defendant-respondent; Evans & Dixon, Ralph C. Kleinschmidt, Gerre S. Langton, St. Louis, of counsel.

SMITH, Presiding Judge.

Plaintiffs appeal from a judgment in favor of defendant based upon a jury verdict.

Plaintiffs sued defendant for the theft loss of an automobile under an insurance policy issued by defendant.

Plaintiffs make no attack upon the sufficiency of the evidence to support the verdict. Their basic attack is that as a matter of law they had an insurable interest in the vehicle, and since that was defendant's only defense, they were entitled to a directed verdict. Certain trial errors are also claimed, some of which are determined by the basic issue raised.

We review the facts in accord with the jury verdict, including all reasonable inferences which may be drawn from those facts. Keith Horton was 17 years old at the time of the acquisition of the automobile involved. Walter Horton is his father. On March 9, 1972, Keith purchased a 1968 black Camaro from a Mr. Pew. He received, at that time, a title to a 1968 Camaro with an identification number of 124378N329375. Neither plaintiff attempted to determine or knew whether the identification number on the title was the same as that affixed to the vehicle. The title was in the name of Carolyn Pew and a signature purporting to be hers appeared on the assignment of title. The signature was not at that time notarized, but Mr. Pew found a notary public who notarized the document. Keith received possession of the car at that time and immediately obtained insurance from defendant on the vehicle described in the title, including coverage for theft. Within five days after the purchase of the automobile, it was stolen, and has never been recovered. Keith and Walter Horton obtained from the Department of Revenue a title to the vehicle described in the Pew title. There is no dispute that this title was ordered immediately after the purchase of the vehicle from the Pews. Nor is any challenge made to the validity of Carolyn Pew's signature. This foregoing evidence was undisputed.

Following the theft a police investigation ensued which brought a Mr. Waller into the picture. On January 1 or 2, 1972, Mr. Waller's 1968 black Camaro was stolen. Based upon pictures of that vehicle, a similar scratch mark, certain special equipment, and general similarity of the automobiles, a jury could reasonably conclude that the vehicle stolen from Mr. Waller and that stolen from Keith Horton were the same. There was evidence that some differences between the cars were the product of changes made by Mr. Pew. There was also evidence that Mr. Pew sold to a Mr. Cragg some equipment from the Waller vehicle and offered to sell him other equipment originally on the Waller vehicle but not on the Horton vehicle when Keith purchased it.

There was further evidence that a white 1968 Camaro bearing a vehicle identification number of 124378N329375 was purchased in a wrecked condition by a Mr. James Egner, Belleville, Illinois, from a Mrs. Goldsmith. This vehicle was cannibalized and its parts used to rebuild another damaged car, which was sold to a Ms. Cummings. The cannibalized vehicle was then no more than a frame, non-repairable economically. This frame and the title, signed for transfer by Mr. Egner, were then given to an unknown young man providing he would haul the frame away.

The title history of the Waller car showed it was originally owned by a Michigan resident who sold it to Waller, who titled it in California. The identification number for that vehicle was 123378L340502. There was testimony that the vehicle identification number appears in the dashboard area and also in a place on the frame known only to the manufacturer and law enforcement authorities. The frame location varies according to the model and in some cases can be found only after cutting through structural portions of the vehicle.

Defendant contends that the evidence warranted the conclusion the Horton vehicle was the stolen Waller vehicle; the title application did not contain the true identification number for the vehicle actually transferred; the sale to the Hortons was therefore void pursuant to Sec. 301.210.4 RSMo 1969; therefore the Hortons had no insurable interest in the automobile.

Plaintiffs contend that as a matter of law the holder of a Missouri Certificate of ownership has an insurable interest in the vehicle transferred with said title and that additionally they were good faith purchasers for value and had an insurable interest in the vehicle.

■ A certificate of title is only prima facie evidence of ownership and may be rebutted. Evidence that the certificate was not properly assigned can constitute such rebuttal. *Case v. Universal Underwriters Ins. Co.*, 534 S.W.2d 635 (Mo.App.1976) [3, 4]. The Missouri courts have consistently held that absolute technical compliance with Sec. 301.210 is required, otherwise the sale is fraudulent and void. *Case v. Universal Underwriters Ins. Co., supra*; *State v. Glenn*, 423 S.W.2d 770 (Mo.1968); *State ex rel. Connecticut Fire Ins. Co. of Hartford v. Cox*, 306 Mo. 537, 268 S.W. 87 (1924). Failure to strictly comply with the statute means no title passes and the purported buyer has no ownership. *State Farm Mutual Automobile Ins. Co. v. MFA Mutual Ins. Co.*, 485 S.W.2d 397 (Mo. banc 1972). This is true, painful as it may be, even where the buyer was guilty of no intentional wrongdoing, *i. e.*, has acted in good faith. *Moore v. State Farm Mutual Automobile Ins. Co.*, 381 S.W.2d 161 (Mo.App.1964) [3, 4]; *Robertson v. Snider*, 63 S.W.2d 508 (Mo. App.1933) [1].[1]

■ It is also clear under the Missouri law that a difference between the identifying number in the certificate of title and the actual vehicle number is a violation of the statute and renders the transaction void. *Craig v. Rueseler Motor Co.*, 159 S.W.2d 374 (Mo.App.1942); *Robertson v. Snider, supra*; *Case v. Universal Underwriters Ins. Co., supra*.

■ Evidence here was sufficient to allow the jury to find that the vehicle acquired by the plaintiffs was stolen and that the number in the certificate of title and that of the vehicle itself were different. The jury so found. The transaction was therefore void and the plaintiffs had no ownership interest in the vehicle.

■ Does plaintiffs' lack of ownership mean they have no insurable interest? "Insurable interest" is a requirement of public policy prerequisite to the enforcement of an insurance contract. It is intended to foreclose gambling contracts, which are void. *American Central Ins. Co. v. Kirby*, 294 S.W.2d 556 (Mo.App.1956) [1, 2].

It is generally true that " . . . anyone has an insurable interest in property who derives a benefit from its existence or would suffer a loss from its destruction." *Bernhardt v. Boeuf & Berger Mutual Ins. Co.*, 319 S.W.2d 672 (Mo.App.1959) [1]; *American Central Ins. Co. v. Kirby, supra*, [3]. Utilizing the above definition, it would appear that a person purchasing a stolen vehicle in good faith would have an insurable interest and the public policy concerns about gambling contracts would not be compromised. Several states have so held. *See Skaff v. United States Fidelity & Guaranty Co.*, 215 So.2d 35 (Fla.App.1968); *Smith v. State Farm Mutual Automobile Ins. Co.*, 220 So.2d 389 (Fla.App.1969); *Treit v. Oregon Automobile Ins. Co.*, 262 Or. 549, 499 P.2d 335 (1972); *Barnett v. London Assur. Corp.*, 138 Wash. 673, 245 P. 3 (1926); *Savarese v. Hartford Fire Ins. Co.*, 99 N.J.L. 435, 123 A. 763 (1924). The rationale of these decisions is summed up in the court's statement in *Skaff v. United States Fidelity & Guaranty Co., supra*, [2]:

"The appellant's interest in the insured vehicle stems from the $4,110.90 he paid for it as well as the loss of its use. By insuring such a substantial interest, the contract can hardly be considered a wager." l.c. 37.

Other jurisdictions have come to the opposite conclusion on the basis that the purchaser of a stolen vehicle does not acquire

---

1. We do not conclude as plaintiffs suggest that *Robertson v. Snider*, 86 S.W.2d 966 (Mo.App. 1935) in any way relaxes this rule by reference to *Rankin v. Wyatt*, 335 Mo. 628, 73 S.W.2d 764 (1934). The *Rankin* case simply held that a person who had possession pursuant to a void sale had a greater right to possession than a trespasser.

"ownership" as required by the "sole ownership" clause of most insurance policies.[2] *See Southern Farmers Mutual Ins. Co. v. Motor Finance Co.,* 215 Ark. 601, 222 S.W.2d 981 (1949); *Hessen v. Iowa Auto Mutual Ins. Co.,* 195 Iowa 141, 190 N.W. 150 (1922); *Gurley v. Phoenix Ins. Co.,* 233 Miss. 58, 101 S.W.2d 101 (1958).

 We are in full agreement with the public policy behind the provisions of Sec. 301.210 to prevent trafficking in stolen cars and with the courts' requirements of strict technical compliance to uphold that policy. We have, however, some doubts that implementation of that public policy is effectuated by invalidating property damage and theft insurance policies[3] purchased in good faith for valuable consideration. However, despite any doubts we may have, the law of Missouri is that a violation of 301.210 precludes the purchaser from obtaining ownership of the vehicle and also precludes him from having an insurable interest therein. *See State ex rel. Connecticut Fire Ins. Co. of Hartford v. Cox, supra; Rankin v. Wyatt,* 335 Mo. 628, 73 S.W.2d 764 (1934) [8]; *Evans v. Home Ins. Co. of New York,* 231 Mo.App. 932, 82 S.W.2d 111 (1935) [1]; *Kelso v. Kelso,* 306 S.W.2d 534 (Mo.1957) [5, 6]; *Still v. Travelers Indemnity Co.,* 374 S.W.2d 95 (Mo.1963) [1]; *Moore v. State Farm Mutual Automobile Ins. Co., supra.* The question of "insurable interest" as it relates to loss coverage of an automobile is not controlled by the general principles or cases relating to other forms of property. *See Still v. Travelers Indemnity Co., supra,* [1]; *Moore v. State Farm Mutual Automobile Ins. Co., supra* [7, 8]. The trial court did not err in refusing to direct a verdict for plaintiffs.

 Several of plaintiffs' allegations of error relate to the court's failure to instruct the jury on the issue of plaintiffs'

good faith in the purchase of the car. What we have heretofore said disposes of those contentions—good faith is not an issue. Plaintiffs' remaining instructional contentions of error relate to the verdict director. The verdict director was "prepared at the court's direction." It was, however, identical to an instruction tendered by plaintiffs except for one paragraph relating to good faith. The challenges now made pertain to language contained in plaintiffs' tendered instruction. Plaintiffs are not now entitled to complain of that language. *Brown v. Bryan,* 419 S.W.2d 62 (Mo.1967) [3–5]· *Leathem v. Longenecker,* 405 S.W.2d 873 (Mo.1966) [1]. Additionally, the instructions were in the words of the statute which is generally sufficient. *Rooney v. Lloyd Metal Products Co.,* 458 S.W.2d 561 (Mo. 1970) [9, 10]. If the instructions were considered by plaintiff to be confusing, a clarifying instruction could and should have been requested.

 Plaintiffs also complain of the denial of a mistrial following a question about whether Mr. Pew had been arrested. No answer was given, an objection was sustained and the jury was admonished. We find no abuse of discretion in the denial of a mistrial.

Plaintiffs' last point relates to the exclusion of evidence relating to attorney's fees under plaintiffs' claim of vexatious refusal to pay. In view of our disposition we need not reach this contention.

Judgment affirmed.

NORWIN D. HOUSER and ALDEN A. STOCKARD, Special Judges, concur.

---

2. In its brief defendant raises the declaration in the policy respecting "sole ownership" in the insured. In its amended answer, however, it did not raise this contractual defense, but only alleged the legal doctrine of lack of insurable interest. In view of our conclusion on the insurable interest question, we need not decide the status of the policy declaration or whether it was properly raised by defendant.

3. We are cognizant that policies covering liability stand upon a different footing. See *State Farm Mutual Automobile Ins. Co. v. MFA Mutual Ins. Co., supra.*