**In the Matter of Robert Stephen SCHALK, Bankrupt.**

**Curtis L. MANN, Trustee in Bankruptcy, Appellant,**

v.

**BELLE–BLAND BANK, Appellee.**

**No. 78–1512.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1978.

Decided Jan. 29, 1979.

994

Willard D. McCarter, Clayton, Mo., for appellant.

Kathleen M. Swihart, Clayton, Mo., for appellee; Marvin Klamen, Clayton, Mo., on brief.

Before HEANEY and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

ROSS, Circuit Judge.

Appellant Curtis L. Mann, Trustee for the bankruptcy estate of Robert Stephen Schalk, sought to compel appellee, the Belle-Bland Bank, to turn over a 1972 Lancer trailer or the amount of its value which the trustee claims as an asset of Schalk's estate. The trustee asserts a right to the vehicle by virtue of sections 70(a) and 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(a), (c). The Bankruptcy Referee denied the trustee's claim, and the district court[1] affirmed. We affirm the judgment of the district court.

In July 1971 a dealer, V. L. Long Mobile Homes, Inc., received the manufacturer's statement of origin for the trailer and on November 22, 1972, sold the vehicle to Lenora Limberg for $10,474.80. Limberg's purchase was financed by the Belle-Bland Bank which took a purchase money security interest in the vehicle.

V. L. Long did not assign the manufacturer's statement of origin to Limberg until October 26, 1973. On October 31, 1973, Limberg sent an application for Missouri title to the Missouri Department of Revenue with the bank's lien noted on the application. The department issued a certificate of title on November 8, 1973, showing Limberg as owner, with the bank's lien noted as of October 26, 1973.

In the meantime, after the sale to Limberg but before her application for a new certificate of ownership, Limberg executed a document on October 18, 1973, purporting to sell all of her interest in the trailer to Robert Stephen Schalk. However, she never assigned a certificate of title to Schalk. Schalk paid $1,000, took possession of the trailer and agreed to pay the remaining installments on Limberg's debt to the bank.[2] He made twenty-four payments of $87.29 each to the bank until March 1976. Later the bank repossessed the trailer, and in October 1976 Schalk instituted bankruptcy proceedings.

### I.

The trustee, who succeeded under section 70(a) of the Bankruptcy Act to such title to personal property as the bankrupt had on the date of bankruptcy, claims title to the vehicle based on the October 18, 1973 sale to Schalk and his subsequent payments. However, we agree with the district court that Schalk did not obtain title to the trailer in October 1973 or at any time thereafter because of Limberg's failure to deliver an assigned certificate of title to Schalk.

Under Mo.Ann.Stat. § 301.210 (Vernon), a buyer's failure to obtain an assigned certificate of ownership in connection with his purchase of a registered motor vehicle or trailer in the state precludes title from passing to him and renders the sale void.[3] The Missouri courts have construed section 301.210 strictly. *See, e. g., Horton v. State Farm Fire & Cas. Co.*, 550 S.W.2d 806 (Mo. App.1977).

---

* The Honorable TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation, participated in the post-argument conference and concurred in this disposition of the case prior to his death on December 21, 1978.

1. The Honorable James H. Meredith, United States District Judge, Eastern District of Missouri.

2. The bank did not release Limberg from primary liability for the debt.

3. Mo.Ann.Stat. § 301.210(4) (Vernon) states:

It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

The Missouri courts have consistently held that absolute technical compliance with Sec. 301.210 is required, otherwise the sale is fraudulent and void. * * * Failure to strictly comply with the statute means no title passes and the purported buyer has no ownership. * * * This is true, painful as it may be, even where the buyer was guilty of no intentional wrongdoing, i. e., has acted in good faith.

*Id.* at 809. *See also Fawley v. Bailey,* 512 S.W.2d 477 (Mo.App.1974).

The fact that the title to plaintiff's truck was of Maryland origin does not alter the necessity of compliance with § 301.210. * * * The statute is applicable to all sales made in Missouri, irrespective of the origin of the certificate of title. The purpose of the statute is aimed to hamper traffic in stolen motor vehicles and to prevent fraud and deceit in the sale of used cars and trucks.

*Id.* at 479.

 Limberg did not hold legal title in trust for Schalk. *Hoshaw v. Fenton,* 232 Mo.App. 137, 141, 110 S.W.2d 1140, 1143 (1937). At most, Schalk acquired a right to compel Limberg to assign the certificate of title to him. *Pearl v. Interstate Sec. Co.,* 357 Mo. 160, 165, 206 S.W.2d 975, 979 (1947). However, he never exercised this right. As Schalk did not have title to the trailer on the date of bankruptcy in October 1976, the trustee's claim based on section 70(a) must fail.

## II.

 In the alternative, the trustee claims that the bank's lien on the trailer is subordinate to his rights arising under section 70(c) of the Bankruptcy Act, 11 U.S.C. § 110(c). Under section 70(c) and Mo.Ann.Stat. § 400.9–301(1)(b), (3) (Vernon),[4] the trustee is vested with the rights of a hypothetical lien creditor whose lien was perfected as of the date of bankruptcy and who is deemed without notice of prior unperfected liens on the bankrupt's property.[5]

 We hold, however, that the bank had perfected its security interest in the trailer by November 1973. Thus the bank's lien, perfected before the date of bankruptcy, has priority over the trustee's section 70(c) lien which arose when bankruptcy proceedings were instituted in October 1976. *See Lewis v. Manufacturers Nat. Bank of Detroit,* 364 U.S. 603, 5 L.Ed.2d 323 (1961).

 Mo.Ann.Stat. § 301.600 (Vernon) governs perfection of security interests in motor vehicles and trailers. That section states in part:

2. A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. *It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter,*

---

**4.** Mo.Ann.Stat. § 400.9–301(1)(b), (3) states in part:

(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of * * * (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected; * * *

(3) A "lien creditor" means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes * * * *a trustee in bankruptcy from the date of the filing of the petition* * * *. (Emphasis added.)

**5.** [T]he trustee's powers, in every case governed by this portion of § 70c, are those

which the state law would allow to a supposed creditor of the bankrupt who had, at the date of bankruptcy, completed the legal (or equitable) processes for perfection of a lien upon all the property available for the satisfaction of his claim against the bankrupt. 4B Collier on Bankruptcy § 70.49 at 596–97 (1976).

The Uniform Commercial Code renders an unperfected security interest subordinate to the claims of intervening lien creditors without notice, in § 9–301(1)(b), and by definition in subsection (3) includes the trustee in bankruptcy within the term lien creditor. *Id.,* § 70.53 at 634.

*otherwise as of the time of the delivery.* (Emphasis added.)

Therefore, the bank's security interest was perfected on October 31, 1973, when Limberg's application for a certificate of ownership noting the bank's lien was sent with the required fee to the Missouri Department of Revenue, or at the latest on November 8, 1973, when the certificate of title was issued showing Limberg as owner[6] and the bank as lienholder as of October 26, 1973.

Accordingly, the judgment of the district court is affirmed.

---

**6.** Limberg took legal title to the trailer upon the issuance of a bill of sale by V. L. Long in November 1972 notwithstanding the belated delivery of an assigned statement of origin. The requirements governing the sale of new motor vehicles in Missouri are less stringent than those for the sale of registered or used vehicles. *See* Mo.Ann.Stat. § 301.200 (Vernon); *Mallory Motor Co. v. Overall,* 279 S.W.2d 532, 534–35 (Mo.App.1955). As we have said, Limberg's purported sale to Schalk in October 1973 was void, so that Limberg still held legal title when the bank perfected its security interest in the trailer in October or November 1973. We note, in addition, that at the time Limberg agreed to sell the trailer to Schalk, both parties recognized the lien of the bank and Schalk continued to make monthly payments to the bank after only a minimum down payment to Limberg. The trustee here is attempting to gain something for the creditors that they are equitably not entitled to receive.