**METRO AUTO AUCTION, et al.,**
**Plaintiffs-Respondents,**

v.

**DIRECTOR OF REVENUE, et al.,**
**Defendants-Appellants,**

**Roy D. Blunt, Secretary of State, Intervenor.**

No. 67180.

Supreme Court of Missouri, En Banc.

March 25, 1986.

William L. Webster, Atty. Gen., Warren Weinstein, Asst. Atty. Gen., Jefferson City, for defendants-appellants.

Douglas Van Camp, Kelly Pool, Jefferson City, for plaintiffs-respondents.

Phillip K. Gebhardt, Asst. Atty. Gen., Jefferson City, for intervenor.

HIGGINS, Chief Justice.

Plaintiffs, nine Missouri corporations operating wholesale automobile auctions in the state of Missouri, sought to enjoin the Director of Revenue from continuing the practice of enforcing section 407.536, RSMo Cum.Supp.1984, by investigating mileage readings submitted by immediate transferors of motor vehicles and placing a warning legend on certificates of title when the Director determines the application contains an incorrect odometer statement. The trial court enjoined the Director finding no statutory authority for this practice. The Director appealed and the Court of Appeals, Western District, affirmed the trial court on different grounds; the Court of Appeals enjoined the Director so long as the Director had not adopted his practice of enforcing section 407.536 by promulgating

a rule under the Administrative Procedure Act. This Court granted transfer to determine the validity of the Director's practice of enforcing section 407.536. The trial court judgment is affirmed.

The Director contends: (1) plaintiffs have no standing because no legally protectable interest of the plaintiff has been affected, and (2) the Director should not be enjoined from carrying out his practice of enforcing section 407.536 because the legislature has authorized this practice under section 407.-536, RSMo Cum.Supp.1984, and section 301.190.2, RSMo Cum.Supp.1984. Plaintiffs respond: (1) plaintiffs have standing because they suffered a legally protectable loss of income as a direct result of the Director's actions, and (2) the Director's practice should be enjoined because section 407.536 specifically limits the Director's authority to place the warning legend on the title to those cases where the inaccurate mileage is revealed by the immediate transferor of that vehicle.

Plaintiffs operate their auctions to facilitate the sale of motor vehicles by registered automobile dealers, leasing companies, and automobile manufacturers. Plaintiffs do not actually buy or sell automobiles but act as brokers in the transactions and receive commissions on the sales. The auctions are not open to the public generally.

The automobiles are sold to the highest bidder. The buyer then issues its check or sight draft to the auction company and after the auction company receives the title and odometer statement from the seller, it forwards those documents to the buyer and issues a check to the seller. Generally, plaintiffs are not in the chain of title of the vehicles sold at auction; however, selling dealers occasionally assign the titles to plaintiffs who in turn reassign the titles to the buyers, or plaintiffs will hold a title transferred in blank, known as an "open title."

Section 407.536 requires transferors of ownership of motor vehicles to place odometer readings on titles. The statute was enacted in 1977 but not enforced by the Director until 1982. Beginning in the fall of 1982, the Director began requiring applicants to state the mileage on the title. In addition, the Director began checking with remote owners of selected vehicles and with other sources to determine if the odometer statements submitted with the applications for transfer of title were accurate. The titles to be checked were selected on a random basis and on the judgment of the examiners. If the Director determined the odometer statement submitted by the seller of the vehicle was inaccurate, he would place the following legend on the new title issued by the Department of Revenue:

This is not the true and accurate mileage of this motor vehicle. Consult the documents on file with the Missouri Department of Revenue for an explanation of the inaccuracy.

Robert Gentle, President of Metro Auto Auction, testified that the warning legend on a title devalues the resale value of the vehicle $500 to $2000. He further testified that when a buyer of a motor vehicle at one of his auctions receives his new title from the Department of Revenue with the warning legend on it, the buyer will immediately contact the auction and demand a refund of money paid for the vehicle plus any expenses incurred. The auction will then contact the selling dealer and if the latter will not buy the automobile back, the auction will refuse to permit that dealer to use its auction in the future and will buy back the vehicle itself. Mr. Gentle testified that while in most instances the auction is not in the chain of title of the affected automobile, and thus under no legal compulsion to purchase it, buyers look upon the auctions as "guarantors" of the vehicles purchased there and require the auctions to repurchase such vehicles at the risk of losing that dealer's business. Mr. Gentle testified that the above situation had occurred five or six times out of some eight to ten thou-

sand sales. Mr. Gentle also testified that he had experienced a decrease in volume of business of 25 percent because some dealers refused to use Missouri auctions because of the Director's policy.

The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

The Director asserts plaintiffs have no standing to bring this action because the evidence did not show that plaintiffs' loss of business was the direct result of the Director's actions or that plaintiffs have demonstrated a legally protectable interest.

■ In order to have standing, a plaintiff must derive an actual and justiciable interest susceptible of protection. *State ex rel. Williams v. Marsh,* 626 S.W.2d 223, 227 (Mo. banc 1982). The doctrine of standing is related to the doctrine which prohibits advisory opinions. *Id.* The test for standing to contest legislative or administrative action is essentially the same. *Palmer v. St. Louis City,* 591 S.W.2d 39, 41 (Mo.App.1979). The party seeking relief must demonstrate that he has a specific and legally cognizable interest in the subject matter of the administrative action and that he has been directly and substantially affected thereby. *Id.*

■ The evidence supports the trial court's finding that plaintiffs have standing because the conduct of the Director has reduced plaintiffs' volume of business and income and will continue to do so in the future if the Director is permitted to continue his enforcement practice of section 407.536. Plaintiff Metro Auto Auction demonstrated a specific interest that was directly and substantially affected when Mr. Gentle testified that the auction had repurchased vehicles receiving the warning legend on their titles and that the auction would no longer deal with sellers who refused to repurchase these devalued vehicles they had put up for auction. Al-though under no legal obligation to repurchase these vehicles, Metro does so pursuant to sound business practice. Therefore, this Court concludes that the Director's practice directly resulted in Metro repurchasing devalued vehicles it had no interest in owning and suffering a loss of the business of sellers who refused to repurchase the vehicles.

The Director argues that plaintiffs have no legal right to sell vehicles with odometers that have been rolled back. While odometer fraud is unlawful, section 407.-511, *et seq.,* RSMo Cum.Supp.1984, the interest claimed by the plaintiffs is not in selling vehicles with rolled-back odometers. Plaintiffs claim an interest in protecting their businesses from loss of income and are asking the courts to determine whether the action of the Department of Revenue has been authorized by the legislature. Thus, the specific and legally cognizable interest that plaintiffs seek to protect is that their business interests not be violated by unauthorized action of the Department of Revenue.

The Director contends the trial court erred in enjoining him from using, for the purpose of section 407.536, information obtained from sources other than the immediate transferor or from placing the statutory legend on the certificate of title when he finds inaccuracies because sections 407.-536 and 301.190.2 give him this authority.

This Court must first determine what powers are given the Director of Revenue under section 407.536. That section reads as follows:

**407.536. Odometer mileage to be shown on title, when—previously untitled vehicles, procedure for—incorrect mileage on odometer, procedure for.** —1. Any person transferring ownership of a motor vehicle previously titled in this or any other state shall do so by assignment of title and shall place the mileage registered on the odometer at the time of transfer above the signature of the transferor. The notarized signature of the transferor below the mileage shall constitute an affidavit of mileage.

If the true mileage is known to the transferor to be different from the number of miles shown on the odometer or the true mileage is unknown, an affidavit from the transferor shall accompany the assignment of title which shall contain all facts known by the transferor concerning the true mileage of the motor vehicle. That affidavit shall become a part of the permanent record of the motor vehicle with the Missouri department of revenue. The department of revenue shall place on all new titles issued after September 28, 1977, a box titled "mileage at the time of transfer."

2. Any person transferring the ownership of a motor vehicle previously untitled in this or any other state to another person shall give an affidavit of mileage disclosure to the transferee. The affidavit shall include above the notarized signature of the transferor the cumulative mileage registered on the odometer at the time of transfer. If the true mileage is known to the transferor to be different from the number of miles shown on the odometer or the true mileage is unknown, an affidavit from the transferor shall accompany the assignment of title which shall contain all facts known by the transferor concerning the true mileage of the motor vehicle. That affidavit shall become a permanent part of the records of the Missouri department of revenue.

3. The mileage disclosed by affidavit for a new or used motor vehicle as described in subsections 1 and 2 of this section shall be placed by the transferee or his assignee on the face of any title or document evidencing ownership. Where the transferor has submitted an explanation why this mileage is incorrect, an asterisk shall follow the mileage on the face of the title or document of ownership issued by the Missouri department of revenue. The asterisk shall reference to a statement on the face and at the bottom of the title document which shall read as follows: "This is not the true and accurate mileage of this motor vehicle. Consult the documents on file with the Missouri department of revenue for an explanation of the inaccuracy."

This statute requires, in subsections 1 and 2, that a seller of an automobile in this state shall provide the buyer with a statement of that automobile's mileage at the time of sale or a statement that the mileage is different from that shown on the odometer or is unknown. Subsection 3 provides that in those instances where the seller knows the odometer reading to be inaccurate or does not know the true mileage of the vehicle, the Department of Revenue shall place upon the face of the title the legend:

This is not the true and accurate mileage of this motor vehicle. Consult the documents on file with the Missouri Department of Revenue for an explanation of the inaccuracy.

Plaintiffs do not contest the power of the Director to place this legend on a car title when the seller has stated that the odometer is wrong or the true mileage is unknown. In such cases, all parties know the seller does not stand by the odometer and can act accordingly. What plaintiffs dispute is the Director's authority to obtain information concerning the true and correct odometer reading from any source other than the immediate transferor of the vehicle and to place the statutory legend on titles after inaccuracies are revealed by sources other than the immediate transferor.

■ "The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *Blue Springs Bowl v. Spralding*, 551 S.W.2d 596, 598 (Mo. banc 1977). Where the language is clear and unambiguous, there is no room for construction. *Id.* This Court must be guided by what the legislature said, not by what the Court thinks it meant to say. *Missouri Public Service Co. v. Platte-Clay Electric Cooperative*, 407 S.W.2d 883, 891 (Mo.1966).

The language of section 407.536 is clear and unambiguous on its face. Subsection 1, in pertinent part, states:

> If the true mileage is known to the transferor to be different from the number of miles shown on the odometer or the true mileage is unknown, an affidavit from the transferor shall accompany the assignment of title which shall contain all facts known by the transferor concerning the true mileage of the motor vehicle....

Subsection 3 then provides:

> Where *the transferor* has submitted an explanation why this mileage is incorrect, an asterisk shall follow the mileage on the face of the title or document of ownership issued by the Missouri department of revenue. The asterisk shall reference to a statement on the fact and at the bottom of the title document which shall read as follows: "This is not the true and accurate mileage of this motor vehicle. Consult the documents on file with the Missouri department of revenue for an explanation of the inaccuracy." [Emphasis supplied.]

■ On its face this language permits the Director to place the inaccurate mileage notation on the title when the immediate transferor has provided the Director with an affidavit showing the odometer reading to be incorrect. The language does not authorize the Director to go behind the information submitted by the immediate transferor or to place the statutory legend on a title when the Director has received information showing a mileage inaccuracy from a source other than the immediate transferor.

■ The Director concedes that section 407.536 does not confer express authority to investigate mileage disclosure statements; however, the Director argues that this Court must determine the intent of the legislature by reading the statute together with related statutes. *State v. White*, 622 S.W.2d 939 (Mo. banc 1981). The Director cites *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.1979), where the court was interpreting the federal odometer statutes which provide for odometer disclosure similar to the Missouri statute. The Director quotes from *Ryan:* "Both the language of [the federal] statute and its history show that it has one purpose: to enable the purchaser of a motor vehicle to know how many miles the vehicle has traveled, as a guide to its safety, reliability, and value." *Id.* at 760. However, the holding in *Ryan* was that "when a transferor knows that a vehicle's odometer has 'turned over' after registering 99,999 miles, the 'cumulative mileage' which must be stated to satisfy the requirements of [the statute] is the total of 100,-000 plus the number actually appearing on the odometer." *Id.* at 760–61. *Ryan* did not involve investigation of the mileage reading as stated by the transferor. Although section 407.511 *et seq.* is a comprehensive enactment by the legislature concerning odometers and evinces a purpose of informing the public of the correct mileage reading on vehicles purchased, "courts must construe a statute as it stands ... and must give effect to it as written.... This Court may not engraft upon the statute provisions which do not appear in explicit words or by implication from other words in the statute." *Wilson v. McNeal*, 575 S.W.2d 802 (Mo.App.1978). Furthermore, a reading of the specific sections contained within section 407.511 *et seq.* shows the purpose of these statutes is to punish those persons responsible for odometer fraud, i.e., the persons who actually roll back the odometer or transfer title to a motor vehicle knowing the odometer reading to be false.[1]

---

1. The title of this collection of statutes is "Mileage Recorders (Odometers) Altering or Resetting Prohibited." Sections 407.515 through 407.-526 make the alteration of odometers a crime. Sections 407.542 through 407.544 provide the penalties for odometer fraud. Section 407.546 creates a private cause of action for transferees who discover odometer alterations. Sections 407.551 and 407.553 give the attorney general and prosecuting attorneys injunctive authority to enjoin violations of the odometer statutes and authority to prosecute criminal or civil action authorized by the odometer statutes. Section 407.556 provides for the suspension or revoca-

The Director argues that section 407.536 read in combination with section 301.190 gives him the authority for his enforcement practice of section 407.536. Section 301.-190 provides generally for the issuance of titles to motor vehicles. Specifically, the Director asserts that section 301.190.2 gives him authority to investigate mileage statements.

> 2. The director of revenue shall use reasonable diligence in ascertaining whether the facts stated in such application are true, and if satisfied that the applicant is the lawful owner of such motor vehicle or trailer, or otherwise entitled to have the same registered in his name, shall thereupon issue an appropriate certificate over his signature and sealed with the seal of his office.....

The Director reasons that because Missouri is a strict title state, no title passes if an incorrect mileage statement is placed in the assignment of title. The Director cites cases requiring strict compliance with the statute governing transfer of vehicles in order for title to pass. *See, e.g., State Farm Mutual Automobile Insurance Co. v. MFA Mutual Insurance Co.*, 485 S.W.2d 397, 401 (Mo. banc 1972); *Allstate Insurance Co. v. Northwestern National Insurance Co.*, 581 S.W.2d 596, 602 (Mo.App. 1979). However, these cases are referring to section 301.210 which sets out the requirements for sale and transfer of vehicles. Section 301.210 in subsection 4 states:

> 4. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void.

Therefore, in order for title to pass in Missouri, the certificate of title must be physically transferred with an assignment from the transferor to the transferee. Missouri is a "strict title" state which means "the assignment of the certificate of title in the manner provided by the statute is the exclusive and only method of transferring title to a motor vehicle, whether the transfer is made by the owner by way of sale or gift or is effected by operation of law." 7A Am.Jur.2d Automobiles and Highway Traffic § 30 (1980).

The Director cites *Horton v. State Farm Fire & Casualty Co.*, 550 S.W.2d 806 (Mo. App.1977), where the court held that a difference between the identification number in the certificate of title and the actual vehicle number prevented title from passing. *Id.* at 809. The court found this to be a violation of section 301.210. *Id.* If the identification numbers are different, the person possessing the vehicle does not possess the vehicle as described in the certificate of title which makes the assignment invalid. *See Craig v. Rueseler Motor Co.*, 159 S.W.2d 374, 378 (Mo.App.1942). This interpretation that the certificate of title must properly identify the vehicle being transferred is consistent with the purpose of section 301.210 as expressed in subsection 3: "Certificates ... shall be retained by the director of revenue and all certificates shall be appropriately indexed so that at all times it will be possible for him to expeditiously trace the ownership of the motor vehicle or trailer designated therein."

Subsection 2 of section 301.210 requires that after the certificate of title is transferred to the buyer, the buyer shall present the certificate to the director of revenue at the time of making application for the registration of such vehicle, whereupon a new certificate of title will be issued to the buyer. Section 301.190.1 sets out the information to be contained in the application for the new certificate of title: (1) a full description of the motor vehicle or trailer, (2) manufacturer's or other identifying

---

tion of licenses of dealers or manufacturers who violate the odometer statutes.

number, and (3) a statement of the applicant's source of title and of any liens or encumbrances on the motor vehicle or trailer. These requirements all have to do with determining the legal ownership of a vehicle and are necessary to "expeditiously trace the ownership of the motor vehicle" as stated in section 301.210.3. The public policy behind the provisions of section 301.-210 is to prevent trafficking in stolen cars. *Horton,* 550 S.W.2d at 810.

Therefore, subsection 2 of section 301.-190, relied upon by the Director, which requires the Director to use "reasonable diligence in ascertaining whether the facts stated in such application are true" must be read in connection with subsection 1 which describes information needed to trace ownership. This is reflected in subsection 2 when it requires the Director to issue a title if satisfied "that the applicant is the lawful owner of such motor vehicle...."

The purpose of requiring the odometer reading to be placed on the certificate of title is to inform the buyer of the correct mileage reading on vehicles purchased; the purpose is not to aid the Director in tracing the ownership of the vehicle. Therefore, title passes if section 301.210 is complied with regardless of whether the assignment of title contains the correct mileage of the vehicle. If the purchaser later determines the mileage stated on the certificate of title is incorrect, he may have a cause of action under section 407.546, RSMo Cum.Supp. 1984:

**407.546. Civil damages for odometer violations—venue.**—1. Any person who, with intent to defraud, violates any of the provisions of sections 407.511 to 407.556 shall be liable in civil damages to the purchaser or owner of the motor vehicle in an amount equal to three times the amount of actual damages sustained or one thousand five hundred dollars, whichever is the greater, and, in the case of any successful action to enforce the liability created by this section, the costs of the action together with reasonable attorney fees as determined by the court.

■ If the legislature had intended to include correct odometer reading as a requirement for passing title, the legislature could have done so rather than specifically covering odometer readings in chapter 407. The legislature is presumed to have intended what the law states directly. *Missouri Division of Employment Security v. Labor and Industrial Relations Commission of Missouri,* 637 S.W.2d 315, 318 (Mo. App.1982).

The Director cites Iowa *Kemper v. Cunningham,* 305 N.W.2d 467 (Iowa 1981), and states that "Iowa, another strict title state, has held that no title passes when an inspection certificate required by Iowa law does not accompany the assignment of title." In *Iowa Kemper* the court determined that Iowa Code, section 321.45(2) (1981), controlled the title issue and provided that no court shall recognize a title to any vehicle "unless evidenced by a certificate of title or manufacturer's or importer's certificate duly issued or assigned *in accordance with provisions of this chapter.*" (Emphasis supplied.) *Id.* at 469. Section 321.238(18) "prohibits a person from selling or transferring a motor vehicle until a valid official certificate of inspection is affixed to the vehicle." *Id.* The court in *Iowa Kemper* concluded that no title passed because the seller, by not providing the inspection certificate, was not following the provisions of chapter 321. *Id.* at 470.

The Director argues that section 407.536 is remedial and should therefore be given a liberal construction, citing State ex rel. *LeFevre v. Stubbs,* 642 S.W.2d 103 (Mo. banc 1982). In *LeFevre,* this Court was deciding whether section 443.410 allowed a mortgagor to redeem property following foreclosure when the mortgagor had deeded the property to a grantee who had assumed the mortgage. However the statute in question provided that "real estate ... shall be subject to redemption by the grantor ... or his heirs, devisees, executors, administrators, grantees or assigns...." The word "grantor" was in the statute and the only issue was whether the word "or" was intended in the alternative or concur-

rent sense. *Id.* at 106. *LeFevre* is distinguishable because in section 407.536 there are no ambiguous words for this Court to interpret.

The Director argues that construing the statute to prevent the Director from placing the correct mileage on the certificate of title if the Director, through investigation, determines the mileage submitted by the transferor to be incorrect is an absurd and unreasonable result. The Director cites *State ex rel. Rhodes v. Crouch,* 621 S.W.2d 47 (Mo. banc 1981), for the proposition that the construction of statutes must be logical and give meaning to the statutes. In *Rhodes,* this Court interpreted a statute giving rural electric cooperatives the power of eminent domain as including the power to enter land in anticipation of and preparation for condemnation even though the legislature had not specifically given this pre-condemnation right to the cooperatives as it had to railroad corporations and the State Highway Commission. *Id.* at 48. The Court concluded this interpretation was necessary to give meaning to the statute because "it would make little sense that the legislature would grant the power of eminent domain to an entity and at the same time deny the entity the means required to use the grant." *Id.* at 49. A specific grant of condemnation power rendered useless without the right to enter the property to make a survey is not analogous to the present situation because of the absence in section 407.536 of any language authorizing the Director to place on a title a mileage reading other than that submitted by the transferor. The Director cites *Breeze v. Goldberg,* 595 S.W.2d 381 (Mo.App.1980) for the proposition that the construction of statutes should not reach an absurd or unreasonable result. In *Breeze* the court interpreted a licensing statute specifying "The Director shall not issue any license ... [t]o any person whose application shows that he was, within five years prior to such application, convicted for the second time of violating the laws of this state relating to driving while intoxicated." The court determined the intent of the legislature was that both violations

must have occurred within the five year period prior to the application. *Id.* at 383. To interpret the statute to mean an applicant could not obtain a license for five years following the date of the second violation regardless of the date of the first violation would reach an absurd result in a situation where, for example, an otherwise qualified driver could not obtain a license until 1983 after a 1978 and 1950 conviction for driving while intoxicated. *Id.*

The statute in question, section 407.536, can be interpreted from its plain language and the result reached is neither unreasonable nor absurd. Under the statute, the transferor of the vehicle is to place the odometer reading on the certificate of title when it is assigned. If the transferor knows the odometer reading is incorrect, he is to submit an affidavit explaining why the reading is wrong. The Director will then put the statutory legend on the certificate of title advising the buyer to contact the Department of Revenue for an explanation of the inaccuracy. If the Director is to investigate the odometer reading submitted by the transferor and in addition put a reading on the title different from that submitted by the transferor along with the statutory legend, the legislature must specifically authorize the Director to do so; there is no authority for this practice either in section 407.536 or in section 407.536 combined with section 301.190.

Accordingly, the judgment of the trial court is affirmed.

BILLINGS, DONNELLY and WELLIVER, JJ., concur.

RENDLEN, J., concurs in result.

BLACKMAR, J., dissents in separate opinion filed.

SNYDER, Special Judge, dissents and concurs in separate dissenting opinion of BLACKMAR, J.

ROBERTSON, J., not sitting.

BLACKMAR, Judge, dissenting.

By the holding in the principal opinion, the Director of Revenue is obliged to issue a certificate of title showing an odometer reading which is shown to be false by the records in the director's office, if the seller has unqualifiedly certified to that reading. I cannot believe that the legislature, in a statute passed to protect purchasers of vehicles against turned-back odometers, intended such a result. I would reverse and remand with directions to dismiss the petition.

The claim of standing is shaky, to put it mildly. The auction neither buys nor sells vehicles. The principal opinion gives heed to the testimony of plaintiff's president that "the warning legend on a title devalues the resale value of the vehicle $500 to $2000," and that, when such a legend appears "the buyer will immediately contact the auction and demand a refund...." I do not believe that the plaintiff has a legally cognizable right to the issuance of the titles which operate as a fraud on purchasers, by deceiving them as to the true mileage. Even if technical standing is found, the plaintiff's position is completely lacking in equity and should not be fortified by injunctive relief.

The principal opinion, furthermore, is not sound on the merits. Statutes relating to odometer readings are designed to protect purchasers. *Ryan v. Edwards*, 592 F.2d 756 (4th Cir.1979). The director's actions are not forbidden by the language of the statute. It follows by fair implication that the director should be able to express a caution when he knows from his official records that the odometer reading tendered by the seller is incorrect. To hold otherwise would allow a statute designed for the protection of buyers to operate as a fraud and deception on them, by giving apparent official sanction to a false reading.

The principal opinion points to the statutory provisions governing the situation in which a seller knows that the figure shown by the odometer is not correct. These provisions are designed for the guidance of a conscientious seller who knows that the odometer's reading is not correct, and provides the means by which he may effect a sale. But for the statutory language, the director might refuse to issue a certificate of title in which the correct mileage cannot be shown. The statutes simply do not deal with the situation in which the director, but not the seller, knows that the odometer reading is false.

The principal opinion rejects *State ex rel. Rhodes v. Crouch*, 621 S.W.2d 47 (Mo. banc 1981), as a basis for the director's action. I consider the case in point and highly pertinent. There the Court looked to the broad purpose of a statute, so as to authorize a pre-condemnation inspection which was not specifically authorized. We borrowed from another statute which applied to other utility companies, thereby rejecting a strict application of the maxim, *expressio unius est exclusio alterius*, in favor of a construction more consonant with the statute's purpose. By the same token we should allow the director to borrow the procedure of § 407.536, RSMo Supp.1984, to avoid the issuance of a false and deceptive certificate of title under the aegis of his office.

Authority also follows by fair implication from § 301.190, RSMo Supp.1984 obliging the director to "use reasonable diligence in ascertaining whether the facts stated in [an application for certificate of title] are true, ...." What is the director to do if he discovers that the seller's statement of mileage is not true? Surely the director should be expected to take some action in this situation. The warning legend is an appropriate response.

It makes no difference that the director may not be able to discover all instances in which the records of the office show that a tendered odometer reading is not correct. There is no reason to require the director to sponsor some fraudulent readings, simply because all fraudulent readings may not be flagged.

The judgment should be reversed and the case remanded with directions to dismiss the petition.