**In re Ervin DUEKER, Appellant,**

v.

**MISSOURI DIVISION OF FAMILY SERVICES, Respondent.**

No. 61398.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 17, 1992.

Canice Timothy Rice, Jr., Margaret E. Zapf, St. Louis, for appellant.

Linda Ray–McKenna, Div. of Legal Services, Jefferson City, for respondent.

AHRENS, Judge.

Appellant, Ervin Dueker (claimant), appeals from the circuit court's order affirming the decision of respondent, Missouri Division of Family Services (DFS), denying claimant's request for medical assistance benefits from August, 1990 to December, 1990. We affirm.

In this contested administrative case we review the decision of DFS' director, not the judgment of the circuit court. *Chrismer v. Missouri State Div. of Family Serv.*, 816 S.W.2d 696, 700 (Mo. App.1991). Our review is limited to determining whether the decision of DFS' director "is supported by competent and substantial evidence on the record as a whole." *Id.* "In determining whether there is substantial evidence, only the evidence most

favorable to the [d]irector's findings and order must be considered." *Id.* Further, if those findings "are supported by substantial and competent evidence in the record, [those findings] must be affirmed, but if they are contrary to the determinative, undisputed facts, the decision is arbitrary and unreasonable and must be reversed." *Id.*

Claimant resides in a nursing home. On August 15, 1990, claimant, through his son, submitted an application to DFS requesting medical assistance benefits. At that time, claimant's assets included a checking account with a balance of $2,168.91; a life insurance policy with a cash value of $1,399.11; and an irrevocable burial contract in the amount of $5,705.00. DFS determined claimant was ineligible for medical assistance benefits as of August, 1990, because his "available resources" exceeded the $999.99 maximum allowed under § 208.010.2(4) RSMo (Supp.1991).

On January 22, 1991, claimant borrowed $1,431.82 against the full cash value of his life insurance policy. When that amount was deposited into claimant's checking account on January 28, 1991, the checking account balance increased to $1,648.34. On January 29, 1991, a $1,400.00 check made payable to the nursing home was drawn on claimant's account. In light of these transactions, DFS determined claimant became eligible for benefits effective January 1, 1991, because at that time he had "available resources" of $248.34.

At an administrative hearing, claimant challenged DFS' determination regarding the effective date of eligibility. Following that hearing, DFS' director found claimant's available resources fell below the statutory maximum on January 29, 1991. Accordingly, DFS' director affirmed the agency's determination to certify claimant for medical assistance benefits effective January, 1991.

In the first of his two points, claimant contends DFS erred in denying claimant medical assistance benefits prior to January 1991, because claimant was eligible after August 1, 1990.

▮ An applicant for public assistance bears the burden of establishing his or her eligibility for public benefits. *Rader v. Missouri State Division of Family Serv.*, 810 S.W.2d 346, 347 (Mo.App.1991). Section 208.010.2(4) provides that such "[b]enefits shall not be payable to any claimant who ... [o]wns or possesses resources in the sum of one thousand dollars or more...." § 208.010.2(4). In determining a claimant's total resources, "there shall be disregarded any life insurance policy, or prearranged funeral or burial contracts which provides for the payment of one thousand five hundred dollars or less upon the death of ... [a] claimant or person for whom benefits are claimed...." § 208.-010.4 RSMo (Supp.1991). "If the value of such policies exceeds one thousand five hundred dollars, then the total value of such policies may be considered in determining resources...." § 208.010.4.

Claimant contends his available resources were below the $1000 statutory maximum in August, 1990, "because [DFS] should have applied the $1,500 life insurance exemption of section 208.010.4, [RSMo], to the cash surrender value of claimant's [life insurance] policy not to claimant's [irrevocable burial contract]." In support of this contention, claimant notes the legislature amended § 208.010.4 in 1985 "and deleted from subsection 4 the word 'irrevocable' prior to the phrase 'prearranged funeral or burial contract.'" Claimant argues this change demonstrates a legislative intent "that the $1,500 life insurance exemption of Section 208.010.4 should only be applied to burial plans or life insurance policies which are not 'irrevocable'."

▮ Appellant's argument is not persuasive. "'The primary rule of statutory construction is to ascertain the intent of the lawmakers from the language used, to give effect to that intent if possible, and to consider words in their plain and ordinary meaning.'" *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 401 (Mo. banc 1986) (quoting *Blue Springs Bowl v. Spradling*, 551 S.W.2d 596, 598 (Mo. banc 1977)). "Where the language is clear and unambiguous, there is no room for construction." *Metro Auto*, 707 S.W.2d

at 401. Further, we "must be guided by what the legislature said, not by what the Court thinks it meant to say." *Id.* Accordingly, we must conclude from the legislature's amendment of § 208.010.4 that it intended the $1,500 exemption to be applied to revocable and irrevocable burial plans. If, as claimant argues, the legislature intended to limit application of that exemption to revocable plans, the legislature would have substituted "revocable" for "irrevocable," rather than merely deleting the term. "The legislature is presumed to have intended what the law states directly." *Metro Auto*, 707 S.W.2d at 404.

In its conclusions of law, DFS' director paraphrased § 208.010.2(4) as providing that: "benefits shall not be payable to any Claimant who owns or possesses *cash or securities* in the sum of one thousand dollars or more...." (Emphasis added). Claimant contends DFS failed to apply § 208.010.2(4), as amended, because effective July 1, 1989, "resources" was substituted for "cash and securities" in that statute. Although the conclusions of law should have referred to "resources," rather than "cash and securities," the record demonstrates DFS' director applied the appropriate test. In her decision, the director concluded: "Competent testimony and evidence substantiated that the Claimant's *resources* fell below the *available resource* maximum on January 29, 1991 at which time he became eligible for assistance." Contrary to claimant's contention, the record does not demonstrate DFS failed to apply § 208.010.2(4), as amended.

In determining the effective date of claimant's eligibility, DFS also applied the guidelines in 13 C.S.R. 40–2.030(9). That regulation provides in part:

A single individual applying for or receiving assistance in programs applying the Old Age Assistance or PTD criteria who owns insurance (over and above the first one thousand five hundred dollars ($1500) in face value) with a cash or loan value of one thousand dollars ($1000) or more will not be considered eligible for assistance on the basis of available resources.

\*     \*     \*     \*     \*     \*

When the claimant has deposited money with an individual, firm or corporation as an advance payment for a funeral and the payment is safeguarded by burial insurance, trust fund or joint bank account, the amount of money over one thousand five hundred dollars ($1500) deposited under this plan will be considered a *resource* in the same manner as the cash or loan value of life insurance policies, if the contract is revocable. If the burial contract is irrevocable, the entire amount of money deposited will be excluded from *available resources*. If the claimant has both life insurance and prepaid burial (revocable or irrevocable), the one thousand five hundred dollar ($1500) *exemption* will apply to either or to any combination. The face value of an irrevocable burial contract will always be counted toward the one thousand five hundred dollar ($1500) *exemption*. (Emphasis added). 13 C.S.R. 40–2.030(9).

Claimant contends this regulation conflicts with 1985 amendments to § 208.010.4. As previously discussed, we disagree with claimant's interpretation of the legislature's intent in deleting the term "irrevocable" in that statute. We find no conflict between 13 C.S.R. 40–2.030(9) and § 208.-010.4. Accordingly, DFS did not err in applying that regulation to determine the date of claimant's eligibility for medical assistance benefits.

In his final contention under this point, claimant asserts DFS' determination that he first became eligible for assistance in January, 1991, "is arbitrary, unreasonable and not supported by substantial evidence." Claimant maintains he was "clearly eligible in August, 1990."

In August, 1990, claimant owned an irrevocable prearranged burial contract with a value in excess of $1,500.00. The value of this irrevocable contract, while not an available resource, was properly applied to the $1,500.00 exemption permitted under § 208.010.4. Claimant's available resources in August, 1990, included the cash value of his life insurance policy and the funds in his checking account. These resources exceeded the $999.99 maximum

permitted under § 208.010.2(4). Therefore, applying the applicable statute and regulation, claimant was ineligible for medical assistance benefits in August, 1990.

When claimant received a loan against the cash value of his life insurance policy, he effectively liquidated that resource. Claimant first became eligible for medical assistance benefits in January, 1991, when he reduced the sum of those loan proceeds and other funds in his checking account below $1,000.00. As such, the decision of DFS' director regarding claimant's eligibility date was supported by substantial evidence; the decision was not arbitrary or unreasonable. Point one is denied.

In his second point, claimant asserts DFS "erred in denying claimant medical assistance benefits prior to January 1, 1991, because claimant's excess assets were caused by [DFS'] failure to notify claimant of his eligibility for benefits within 90 days after application in violation of 42 C.F.R. section 435.911."

■■■ DFS filed a motion to strike this portion of the brief on the ground that claimant is asserting this point for the first time on appeal. That motion was taken with the case.

At the administrative hearing, claimant, through his son, questioned DFS' failure to relate information regarding the value of claimant's life insurance policy until early 1991.[1] No claim was made, however, that DFS violated any regulation regarding timely notification of eligibility for medical assistance benefits. Disposition of that claim would require findings of fact and conclusions of law which do not appear in the record. "[T]his court will not set aside an administrative action unless the agency has been given a prior opportunity to consider the point." *Jackson v. Sayad*, 741 S.W.2d 847, 850 (Mo.App.1987). The issue now raised was not presented for determination at the administrative hearing. Accordingly, that issue was not preserved for appellate review. *See Id.* Further, we find no plain error affecting substantial rights. Rule 84.13(c).

DFS' motion to strike is granted. That portion of claimant's second point relating to DFS' alleged failure to comply with 42 C.F.R. § 435.911 and 42 U.S.C. § 1396a is stricken.

Claimant also asserts under point two that DFS "failed to consider all of the facts and circumstances surrounding claimant" as required by § 208.010.1 RSMo (Supp. 1991). After a careful review, we find the record supports the decision of DFS' director.

The judgment of the circuit court affirming the decision of DFS' director is affirmed.

REINHARD and CRIST, JJ., concur.

---

1. Claimant does not assert that information regarding the value of his life insurance policy was unavailable to him in August, 1990. Further, he does not allege DFS was required by statute or regulation to provide that information to him.